**The UNITED STATES of America, Plaintiff-Appellee,**

v.

**Fred CUMMINGS, Defendant-Appellant.**

No. 84–2688.

United States Court of Appeals, Tenth Circuit.

Aug. 13, 1986.

Benjamin L. Burgess, Jr. (Amanda S. Meers, Asst. U.S. Atty., with him on brief), U.S. Atty., Kansas City, Kan., for plaintiff-appellee.

David J. Phillips (Charles D. Anderson, Federal Public Defender, with him on brief), Asst. Federal Public Defender, Kansas City, Kan., for defendant-appellant.

Before BARRETT, LOGAN and BAL-DOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant-appellant Fred Cummings (Cummings) was convicted in district court of selling stolen property pursuant to 18 U.S.C. § 2315. He appeals, claiming the trial court's jury instruction on the valuation of stolen property was erroneous, the government failed to prove sufficient value, the admission of a similar but subsequent conviction was improper, and the court's limiting instruction on the conviction was inadequate. We affirm.

The stolen property described in the indictment was the cab portion of a 1979 Peterbilt tractor-truck. The entire tractor-truck was stolen from its owner in Tulsa, Oklahoma. An FBI agent observed the truck at Cummings' residence in Springfield, Missouri, a few days later and Cummings offered to sell the cab portion of the truck to the agent for $4500. Cummings later contacted the agent regarding delivery of the cab. Cummings then met with the agent in Kansas City, Kansas, to deliver the cab. The cab was finally delivered to the agent in Wellsville, Kansas, due to unloading problems. The agent then paid Cummings $4000, which Cummings accepted as full payment. Cummings was indicted for selling stolen property with a value of $5000 or more which had been a part of interstate commerce and which Cummings knew to be stolen. 18 U.S.C. § 2315.[1] He was found guilty by a jury and sentenced to ten years in prison.

Cummings first contends that the jury instruction on the value of stolen property was erroneous. The trial judge adopted the government's proposed jury instruction. The instruction noted that one element of the offense was that the property allegedly stolen have a value in excess of $5000, and then provided in part:

Value under the law means the market value of the property at the time and place it was allegedly stolen or its market value at any time during it receipt and concealment.

"Market value" means the replacement price a willing buyer, in this case, the original owner, would pay to a willing seller at a particular time and place.

Rec. vol. I at 22. Cummings contends that the instruction is improper because of its reference to replacement price and the original owner. He further contends that even if the instruction was correct, the government failed to prove that the market value of the cab exceeded $5000.

The determination of value of stolen property under 18 U.S.C. § 2315 is a jury question. *United States v. Smith,* 692 F.2d 658, 660 (10th Cir.1982), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). The requirement that the value of the property exceed $5000 is

---

1. 18 U.S.C. § 2315 provides in relevant part: Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more ... moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, ... [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

jurisdictional and proof that the amount is in excess of $5000 is an essential element of the offense. *Id.* The jurisdictional minimum is designed to leave to the states the punishment of those who deal in stolen property of a lesser value. *United States v. Nall,* 437 F.2d 1177, 1187 (5th Cir.1971). The term "value" as used in 18 U.S.C. § 2315 is defined in 18 U.S.C. § 2311[2] as the "face, par, or market value, whichever is the greatest." In this case, the cab had no face or par value, so proof of the market value in excess of $5000 was essential for a conviction.

■ The market value of stolen property under 18 U.S.C. § 2311 is that price which a willing buyer would pay a willing seller either at the time and place that the property was stolen or at any time during the receipt or concealment of the property. *United States v. Bakken,* 734 F.2d 1273, 1278 (7th Cir.1984); *United States v. Robinson,* 687 F.2d 359, 360 (11th Cir.1982); *United States v. Perry,* 638 F.2d 862, 865 (5th Cir.1981). When merchandise is stolen from a merchant, market value is the sales price the merchant would have obtained for the merchandise. *United States v. Robinson,* 687 F.2d at 360. Thus, where the victim is a retail merchant, the market value is the retail sales price, *see e.g. Cave v. United States,* 390 F.2d 58, 67 (8th Cir. 1968), *cert. denied,* 392 U.S. 906, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1968), and where the victim is a wholesale merchant, the market value is the wholesale price. *See e.g. United States v. Perry,* 638 F.2d at 865; *United States v. Tippett,* 353 F.2d 335, 338 (4th Cir.1965), *cert. denied,* 383 U.S. 908, 86 S.Ct. 889, 15 L.Ed.2d 664 (1966). Where property is stolen from a non-merchant, the market value is the price the non-merchant would have to pay to acquire the property. Thus, where silverware was stolen from a "discriminating consumer who appreciated fine silver," the market value of the stolen silverware was "the price a discriminating consumer would have paid for it." *United*

*States v. Robinson,* 687 F.2d at 360. In this case, where the truck cab was stolen from a trucker who owned his own rig, the market value is the price that such an owner would pay for the cab.

■ The trial court's instruction is consistent with the above principles, and properly refers the jury to the price the owner would pay for the cab. The instruction mentions a willing buyer and a willing seller, necessary elements of market value. The references to replacement price and to the original owner simply indicate the type of market in which this non-merchant would have acquired the cab.

The suggested problems due to mentioning replacement price and the original owner simply are not present in this case. This instruction does not result in a valuation measured by such standards as replacement cost or reproduction cost, without reference to a willing buyer-willing seller market, that is warned against in *Abbott v. United States,* 239 F.2d 310, 313 (5th Cir. 1956). Nor does the instruction constitute a test of value in which worth might be "fixed by undulating elusive factors of which personal sentimental attachment, collateral cost of production, [and] unique value to a particular person are but typical." *Abbott v. United States,* 239 F.2d at 313. In this case, there simply was no evidence that the price the original owner as willing buyer would pay a willing seller to replace the cab depended on subjective factors inconsistent with a market value approach. The instruction specifically uses the terms "willing buyer" and "willing seller," thereby emphasizing a rational, objective approach to value.

■ Appellant's arguments concerning replacement price actually relate to problems which might be associated with approximating market value by using replacement cost or reproduction cost. Replacement cost would be the cost of acquiring

---

**2.** The final paragraph of 18 U.S.C. § 2311 provides:

"Value" means the face, par, or market value, whichever is the greatest, and the aggregate

value of all goods, wares, and merchandise, securities, and money referred to in a single indictment shall constitute the value thereof.

new and substantially equivalent property, while reproduction cost would be the cost of producing new and substantially identical property. Both would have to be adjusted to account for the stolen property's depreciation. Thus, where the replacement cost or reproduction cost did not reflect economic obsolescence and physical deterioration of the stolen property, reliance on such cost would be improper. *See Stern v. United States,* 204 F.2d 647, 649–50 (6th Cir.1953). These measures of value adjusted for depreciation are more relevant where there is no longer an identifiable market for the item stolen. Such a situation might arise where a stolen item is unique, is no longer available, or is obsolete. In this case, however, the trial testimony indicated the presence of an identifiable market for the type of used property stolen, a used 1979 Peterbilt cab. This market adequately compensates for economic obsolescence as well as physical deterioration of the stolen property. The price the owner of the property would have to pay to replace the property in that market represents the market price. The challenged instruction given by the trial judge was proper.

Cummings also contends that the government has failed to prove market value under any standard. He asserts that the government did not prove either what the original owner would have paid as replacement price or what a willing buyer would have paid a willing seller. Our review of the record indicates otherwise.

■ Mr. Cipra, a claims supervisor with USF & G, the insurance company carrying the policy on the truck, testified that USF & G received a salvage price of $2000 for the cab, but that the salvage price is usually about 20% of the market value of the item, depending on its condition. Rec. vol. III at 24–25. FBI Agent Jones testified that the cab had a value of $6000–$8000. Rec. vol. III at 70. Clifford Riley, the body shop manager at Kansas City Peterbilt, testified that he would have to pay $5500–$6000 for the cab, and would then mark it up for resale or use in a repair job. Rec.

vol. III at 127–128. FBI Agent Trammell testified that the market value of the cab was $5500. Rec. vol. III at 142. Robert LaBeau, body shop foreman at Aero Truck Sales, stated that he would pay $2000–$3000 for the cab for use in a repair job. Rec. vol. III at 152. Timothy Edie, a parts salesman for Central States Truck, testified that the cab could be bought for $1500–$3500 in order to resell it or use it in a repair job, but that he would not dispute Mr. Riley's valuation. Rec. vol. III at 157–159. As noted earlier, the determination as to value is left to the jury, and there was a sufficient evidentiary basis in this case for the jury's finding that the market value of the cab was in excess of $5000.

■ Cummings next contends that the admission of his Missouri state conviction for receiving stolen property was error because it was not relevant and was highly prejudicial. The stolen property involved in that case was another Peterbilt tractor-truck. The act underlying the Missouri conviction occurred four months after the sale of stolen property in this case.

Fed.R.Evid. 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person to show that he acted in conformity therewith. However, such evidence may be admissible to show knowledge, motive or intent on the part of the actor. Fed.R.Evid. 404(b); *United States v. Bridwell,* 583 F.2d 1135, 1140 (10th Cir.1978). The government offered evidence of the conviction to show knowledge, and it was admitted for that purpose. Rec. vol. III at 5.

■ Evidence of other crimes, wrongs or acts usually involves previous conduct, but under certain circumstances, conduct subsequent to the offense charged is admissible. *United States v. Cook,* 745 F.2d 1311, 1317–18 (10th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985); *United States v. Bridwell,* 583 F.2d at 1140. To be admissible, the government must make a showing that each act is relevant: "(1) the government must articulate precisely the evidential hypothesis by which a fact of consequence

may be inferred from the other acts evidence, and (2) there must be a clear and logical connection between the alleged other acts and the case being tried." *United States v. Cook*, 745 F.2d at 1317.

Here, the government sought to show that Cummings knew that the truck cab was stolen by using evidence of the Missouri conviction. This evidence tends to demonstrate Cummings' knowledge: 1) by establishing a pattern or practice of dealing in stolen trucks and truck parts, and 2) by reducing the possibility that Cummings' involvement with the stolen property in this case resulted from mistake, accident, or other innocent reason. *See United States v. Grady*, 544 F.2d 598, 604–05 (2nd Cir. 1976) (holding evidence of subsequent similar acts admissible to show knowledge and intent). Moreover, the closeness in time and the similarity of the crime underlying the Missouri conviction tend to link the subsequent acts in Missouri to those in this case.[3] *See United States v. Bridwell*, 583 F.2d at 1140. The evidence of the Missouri conviction was relevant to the issue of knowledge in the present case.

■■■ When evidence of other crimes, wrongs or acts is relevant and tends to prove an issue such as knowledge, the trial court must weigh the probative value of the evidence against the prejudice inherent in such evidence. Fed.R.Evid. 403; *United States v. Cook*, 745 F.2d at 1318. It is only where the unfair prejudice substantially outweighs the probative value that such evidence must be excluded, Fed.R.Evid. 403, and this determination is left to the discretion of the trial judge. *United States v. Cook*, 745 F.2d at 1318. Here, the trial judge found that any unfair prejudice of admitting the Missouri conviction did not outweigh its probative value, and gave limiting instructions to the jury as to the use of the evidence both at the time it was introduced and at the conclusion of the trial. Fed.R.Evid. 105. Whether to admit the subsequent conviction after considering the purpose for which it was offered and the danger of unfair prejudice is a matter within the particular competence of the trial court. We find no abuse of discretion.

Finally, Cummings argues that the limiting instruction on the Missouri conviction was prejudicial because it created a presumption of knowledge. The instruction provided that "evidence of this other offense was admitted only for the limited purpose of showing that the Defendant knew that the particular vehicle in question in this case had been stolen." Rec. vol. I at 26, vol. III at 147. Cummings contends that the instruction is unfair because it

---

3. The circumstances in this case are distinguishable from those in cases such as *United States v. Biswell*, 700 F.2d 1310 (10th Cir.1983), where vague evidence of defendant's gambling and dealings in stolen property was offered without a clearly defined reason by the government in a trial for the unauthorized use and possession of food stamps. In *Biswell*, the court of appeals noted that it was not dealing with "proof clearly establishing an identified, reasonably recent offense ..., or with any reasonably recent conviction of such an offense." *United States v. Biswell*, 700 F.2d at 1318. The trial court's decision to admit the evidence was error because the government failed to show the relevance of the challenged evidence to the issues in the case, and the predominant purpose of the evidence was to show the defendant's criminal character and that his actions conformed to such character. *United States v. Biswell*, 700 F.2d at 1317–19. Here, the evidence of the Missouri conviction dealt with a specific, recent transaction in stolen property of a like nature and was offered to prove knowledge.

Likewise, this case is distinguishable from *United States v. Burkhart*, 458 F.2d 201 (10th Cir.1972). In *Burkhart*, the defendant was charged with interstate transportation of a stolen motor vehicle. 18 U.S.C. § 2312 (Dyer Act). The government attempted to introduce evidence of defendant's two prior Dyer Act violations, which occurred in Oregon in 1955 and Mississippi in 1966, while the acts in question occurred in Kansas in 1970. The government did not connect the prior acts and the current acts in question by proving a relationship between the acts, or a factual similarity between the acts. The court of appeals held that "the extreme remoteness in time and space, together with the lack of any apparent similarity or connection with the principal charge" rendered the evidence of the prior convictions inadmissible. *United States v. Burkhart*, 458 F.2d at 204. In the present case, the challenged acts occurred within four months of one another, and both were connected with Cummings' activities with Peterbilt tractor-trucks in Missouri.

should have indicated that the evidence was admitted only as to the issue of "whether or not" Cummings knew the vehicle was stolen. The trial court's limiting instruction was adequate, particularly when the court's instructions to the jury are considered as a whole, and appellant's final argument is without merit.

AFFIRMED.