**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rick Lynn MITTLEIDER, a/k/a Rick
Wyman, Defendant–Appellant.**

**No. 86–1637.**

United States Court of Appeals,
Tenth Circuit.

Dec. 22, 1987.

Francis Leland Pico, Asst. U.S. Atty., and Richard A. Stacy, U.S. Atty., Cheyenne, Wyo., for plaintiff-appellee.

Vicki Mandell–King, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., with her on brief), for defendant-appellant.

Before MOORE and BALDOCK, Circuit Judges, and BOHANON,* District Judge.

BALDOCK, Circuit Judge.

Defendant-appellant Rick Lynn Mittleider, a/k/a Rick Wyman, was found guilty by a jury of the following: one count of making a false statement during the purchase of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a); two counts of receiving firearms as a fugitive from justice, in violation of 18 U.S.C. §§ 922(h) and 924(a); one count of possessing a firearm which had been made without payment of a making tax, in violation of 26 U.S.C. §§ 5861(c) and 5871; one count of possessing a firearm which had not been registered, in violation of 26 U.S.C. §§ 5861(d) and 5871; and one count of transferring a firearm without having paid the transfer tax, in violation of 26 U.S.C. §§ 5861 and 5871. The court sentenced defendant to consecutive one-year terms of imprisonment on two of the counts and to three-year terms of probation on the remaining counts. On appeal, defendant contends that: 1) the government failed to prove that he was a fugitive from justice; 2) the

---

* The Honorable Luther L. Bohanon, Senior Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

trial court erred in admitting into evidence partially inaudible tape recordings and in allowing the jury to utilize written transcripts of those tapes; 3) the trial court erred in giving Instruction No. 23 concerning knowledge; 4) the evidence was insufficient to show that he knew that the firearm he sold to a confidential informant was an automatic weapon; and 5) the trial court erred in admitting evidence of "subsequent" other acts. For the reasons stated below, we affirm.

Defendant joined the Army in December of 1979. At that time, he was a resident of Meridian, Idaho. While his surname at birth was Wyman, defendant enlisted in the military under his stepfather's name, Mittleider. The Army assigned defendant to Ft. Benning, Georgia, where he began his initial tour of duty. On June 30, 1980, defendant was considered to be absent without leave (AWOL) when he failed to report to his duty station at Ft. Benning. After thirty days, defendant was classified as a deserter, and his name was entered into the National Crime Information Center (NCIC) computer for the purpose of informing civilian authorities that he should be arrested.[1] The Army attempted to locate defendant by sending letters to him and to his mother in Meridian, Idaho.

Defendant returned to Idaho after failing to report to his duty station in Georgia. He then moved to Casper, Wyoming, and for several years went by the name Duffy DuPree. Sometime during early 1982, defendant, using the name Duffy DuPree, purchased an AR–15 semi-automatic rifle in a private sale. On December 3, 1984, defendant, now using the name Rick Wyman, purchased a J–15 semi-automatic rifle from a federally-licensed firearms dealer. In the course of that transaction, defendant executed Bureau of Alcohol, Tobacco and Firearms (ATF) Form 4473. He responded negatively to the question on the form asking whether he was a fugitive from justice.

Approximately a month later, ATF Special Agent George Barnes commenced an investigation of automatic weapons transactions in the Casper area. Special Agent Barnes decided to utilize the assistance of a confidential informant named Mike Stone. On January 18, 1985, Stone approached Robert Laing, a target of the ATF investigation, in an attempt to purchase automatic weapons. Laing advised Stone to contact defendant. That same day, Stone went to defendant's home, where he purchased a fully automatic firearm. The machinegun which Stone bought was the same J–15 rifle which defendant had purchased the previous month, the difference being that it had been converted into an automatic weapon.

Subsequently, the ATF investigation included attempts to purchase additional machineguns from defendant. On March 7, 1985, Stone purchased an AR–15 semi-automatic weapon from defendant, along with parts to convert it into an automatic weapon. Posing as a survivalist interested in purchasing machineguns, ATF Special Agent David Webb made several contacts with defendant. Between March and July of 1985, various conversations between Stone and defendant and between Special Agent Webb and defendant were recorded.

On January 8, 1986, defendant was arrested in Casper while delivering two semi-automatic weapons to Special Agent Webb. Defendant admitted that he had purchased the weapons from Laing on October 21, 1985. Special Agent Webb then addressed defendant by the name Rick Mittleider and asked him if he was a deserter. Defendant responded that he had been discharged from the military and that he had received mail from the Army at his home in Idaho, but had never opened the letters.

## I.

■ Defendant first contends that the government failed to prove that he was a

---

**1.** The record does not affirmatively disclose that a warrant was actually issued for defendant's arrest or that desertion charges were filed. It does reveal, however, that defendant was considered to be AWOL on June 30, 1980, that he

was classified administratively as a deserter thirty days later and that his name was submitted to the NCIC in order to alert civilian authorities.

fugitive from justice, an element of three of the counts upon which he was convicted.[2] He argues that he did not "flee" the state of Georgia to avoid prosecution, but rather left the military base there and became AWOL when he failed to return. Defendant further argues that the statute defining the term "fugitive from justice" is silent concerning flight from a crime arising under military jurisdiction and therefore is not applicable.

As provided in 18 U.S.C. § 921(a)(15), "[t]he term 'fugitive from justice' means any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding." Although the statute does not specifically address military crimes, neither does it distinguish among crimes arising under federal, military or state jurisdiction. There is no question that a serviceman who is AWOL or has deserted has committed a crime. The statutes defining those crimes are punitive in nature, providing that an individual guilty of either charge shall be punished "as a court martial may direct." 10 U.S.C. §§ 885 (desertion) and 886 (absence without leave). While 18 U.S.C. § 921(a)(15) has not previously been interpreted in this context, we conclude that the only possible construction of the statute is that an individual who has fled from any state to avoid prosecution for a military crime is a fugitive for purposes of violations of the federal firearms laws.[3] To construe the statute otherwise would subvert the obvious intent of Congress to prevent individuals fleeing from prosecution from receiving firearms.

**2.** 18 U.S.C. § 922(a)(6) provides that it is unlawful for a person acquiring "any firearm ... knowingly to make any false or fictitious ... written statment ... intended or likely to deceive ... with respect to any fact material to the lawfulness of the sale." 18 U.S.C. § 922(h)(2) prohibits a person "who is a fugitive from justice" from receiving "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

**3.** Apparently there are no reported cases involving a serviceman who has fled from a state to avoid military prosecution and has later faced civilian charges in which his status as a fugitive was an element; however, a recent civil case in which the plaintiff was denied access to the

Having concluded that the statute applies to prosecutions for military crimes, we must address the sufficiency of the evidence presented to prove defendant's status as a fugitive. In so doing, this court looks to all the evidence, both direct and circumstantial, in the light most favorable to the government. *United States v. Alonso*, 790 F.2d 1489, 1492 (10th Cir.1986). All reasonable inferences must be made in support of the jury's verdict. *Id.* A review of the record discloses ample evidence from which the jury could infer that defendant fled from the state of Georgia to avoid prosecution. While his surname at birth was Wyman, he enlisted in the Army under the name Mittleider. He apparently left the state of Georgia soon after failing to report for duty at Ft. Benning. While residing in Casper, defendant used the name Duffy DuPree, then later reverted to the name Rick Wyman. Upon being arrested, defendant admitted that he had received numerous letters from the Army at his home in Idaho, but had never opened them. At the time of his arrest, he evidently had not informed the Army of his whereabouts in over five years.

The case cited by defendant to support his contention that he did not leave the state of Georgia to avoid arrest is distinguishable. In *United States v. Durcan*, 539 F.2d 29 (9th Cir.1976), the defendant's car was searched by customs officials upon his entry into the United States from Canada, and while the search was in progress, the authorities learned of an outstanding warrant for the defendant's arrest issued

federal courts because he was a fugitive from military justice lends at least partial support to this court's construction of 18 U.S.C. § 921(a)(15). In *Brin v. Marsh*, 596 F.Supp. 1007 (D.D.C.1984), the plaintiff sought mandamus to compel the Secretary of the Army to discharge him from the military and to pay him the retirement benefits to which he alleged he was entitled. The plaintiff was the subject of two court martial charges and an arrest warrant, and at the time he filed the mandamus action was still at large. *Id.* at 1009. The district court deemed itself "compelled to find" that the plaintiff was a fugitive, and therefore concluded that his suit had to be dismissed. *Id.* at 1010.

in Dade County, Florida. The Ninth Circuit reversed his conviction for transporting a firearm while a fugitive because the government had failed to prove that he was a "fugitive from justice" within the meaning of the statute. The court determined that the only evidence concerning whether the defendant left Florida with the intent to avoid arrest or prosecution was unrebutted testimony that the defendant and his companions left the state on vacation more than a month before a warrant was issued for defendant's arrest. *Id.* at 31–32.

Here, it was entirely reasonable for the jury to infer that defendant knew that charges would be filed by the Army when he failed to report to his duty station at Ft. Benning. The jury also could reasonably infer that defendant left the state of Georgia, apparently soon after his failure to report for duty, in order to avoid prosecution. Defendant's argument that he would have been considered AWOL without leaving the state of Georgia is true in theory, yet irrelevant under the circumstances of this case. His alternative argument, that he did not flee from prosecution but merely absented himself from his military duty station, misses the point. He became absent without leave when he failed to report, then became a fugitive when he left the state of Georgia to avoid prosecution for that crime. In conclusion, we hold that the government sustained its burden of showing that defendant was a fugitive from justice.

## II.

■ Defendant next claims that the trial court erred in admitting into evidence various tape recordings, in particular the tapes of his conversation with Stone during the sale of the machinegun, on the basis that the tapes were so inaudible as to deprive the recorded conversation of its context. Additionally, he asserts that the court erred in allowing the jurors to view written transcripts as they listened to the tapes,

because it was inevitable that they would give inordinate attention to the transcripts.

The fact that portions of the tapes which defendant deems critical are unintelligible due to background noise is not necessarily an impediment to the admission of the tapes. The admissibility of partially inaudible tape recordings lies within the sound discretion of the trial court. *United States v. Devous*, 764 F.2d 1349, 1353 (10th Cir. 1985); *United States v. Watson*, 594 F.2d 1330, 1335 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Unless the unintelligible portions are so substantial as to render untrustworthy the recordings as a whole, the tapes may be admitted. *United States v. Davis*, 780 F.2d 838, 846 (10th Cir.1985); *United States v. Watson*, 594 F.2d at 1335.

■ The trial court acted within its discretion in admitting the tape recordings, as the inaudible portions do not render untrustworthy the recordings in their entirety. Further, three witnesses, all of whom heard the conversation, testified concerning defendant's statements made during the sale of the machinegun, and thus were subject to cross-examination in regard to any inaccuracies or distortions in the tapes. Admission of partially inaudible tapes may be appropriate when a witness who heard the statements testifies and the recording gives independent support to that testimony. *United States v. Davis*, 780 F.2d at 846.

■ Nor did the court err in allowing the jury to view the written transcripts of the tapes. The transcripts were not admitted into evidence. The court preliminarily instructed the jury that the transcripts were not evidence and had been furnished solely for the purpose of guidance. Rec. vol. IV at 205–06.[4] Such limited use of the transcripts was a proper exercise of the trial court's discretion. *United States v. Watson*, 594 F.2d at 1336.

---

4. The cautionary instruction given by the trial court tracked virtually verbatim an instruction given in *United States v. Robinson*, 707 F.2d 872, 878 (6th Cir.1983), and cited with approval by this court in *United States v. Devous*, 764 F.2d at 1353–54 n. 3.

### III.

Defendant next contends that the trial court erred in giving Instruction No. 23 regarding knowledge. He concedes that he failed to pose an objection at trial, and therefore that the instruction is to be reviewed under the "plain error" standard. Fed.R.Crim.P. 52(b); *see United States v. Devous*, 764 F.2d at 1353.

The trial court instructed the jury that:

The mere possession of a firearm which is required to be registered and has not been registered is a violation of the laws of the United States. It is not necessary for the government to prove that the defendant knew that the weapon in his possession was a machine gun within the meaning of the statute or that he knew that registration was required. It is sufficient if you find beyond a reasonable doubt that he knowingly possessed it.

Rec. vol. V at 549–50.[5] The instruction contains an accurate statement of the applicable law. The offenses with which defendant was charged were not specific intent crimes, and the government was not required to prove either that he knew that possession of the weapon was against the law or that registration of the weapon was required. *See, e.g., United States v. Freed*, 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971); *United States v. Gonzalez*, 719 F.2d 1516, 1522 (11th Cir. 1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984); *Morgan v. United States*, 564 F.2d 803, 805–06 (8th Cir.1977) (per curiam).

Relying primarily on *United States v. Herbert*, 698 F.2d 981 (9th Cir.), *cert. denied*, 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983), defendant nevertheless argues that the instruction constitutes plain error because of the lack of evidence indicating that he knew the J–15 firearm was an automatic weapon. In *Herbert*, a similar instruction was found to be erroneous in light of the fact that the weapons at issue had been internally modified and, from the exterior, "looked like perfectly legal semi-automatic pistols." *Id.* at 986. The Ninth Circuit held that "in a situation in which there were no external indications on the weapon that would 'alert one to the likelihood of regulation,'" the instruction was erroneous. *Id.* at 987. As to one of the defendants, however, the court found the error to be harmless because there was overwhelming evidence that he knew the weapons were automatic. *Id.*

The instant case is factually dissimilar. As defendant properly recognizes, the modifications on the J–15 firearm were external in nature. In addition, the record indicates that he had actual knowledge that it had been converted into an automatic weapon.

More importantly, the rationale underlying the court's holding in *Herbert* is of questionable validity. Recently, the Fourth Circuit expressly declined to follow *Herbert*, and instead adopted the rule previously enunciated by the Eighth Circuit that "[s]ufficient intent is established if the defendant is shown to have possessed an item 'which he knew to be a firearm within the general meaning of the term.'" *United States v. Shilling*, 826 F.2d 1365, 1368 (4th Cir.1987) (per curiam) (quoting *Morgan v. United States*, 564 F.2d at 805). We are in accord with the rule adopted by the Fourth Circuit in *Shilling* that the government is not required to prove actual knowledge of a weapon's physical properties. *See Id.* at 1368; *Morgan v. United States*, 564 F.2d at 805–06; *see also United States v. Gonzalez*, 719 F.2d at 1522. For the foregoing reasons, we find that the trial court's instruction was not plain error, but rather was proper in light of the applicable law and the evidence presented.

### IV.

In a related argument, defendant next claims there was insufficient evidence to show that he had actual knowledge that the J–15 firearm was an automatic weapon. His claim is premised on the implicit, and unsupported, assumption that the government was required to prove that he knew

---

5. The court's instruction was based upon the recommended instruction found in 2 E. Devitt and C. Blackmar, Federal Jury Practice and Instructions § 59.04 (3d ed. 1977).

that the weapon was automatic. As discussed above, that assumption is unfounded. *See United States v. Shilling*, 826 F.2d at 1367–68; *Morgan v. United States*, 564 F.2d at 805–06.

## V.

Defendant's final contention is that the trial court abused its discretion in admitting evidence of "subsequent" other acts. The allegedly prejudicial evidence addressed defendant's sale of the AR–15 rifle and the conversion kit to Stone on March 7, 1985, and defendant's conversation with Special Agent Webb on May 22, 1985.

The charges filed against defendant pertained to the purchase, possession and transfer of firearms on January 18, 1985 and on October 21, 1985. The evidence of other uncharged acts pertained to events which occurred between the dates on which the charged crimes were committed. Defendant contends that the controverted evidence was of "subsequent" other acts, while the government more appropriately characterizes it as evidence of "other contemporaneous acts."

The determination of whether evidence is relevant lies within the sound discretion of the trial court. *United States v. Neal*, 718 F.2d 1505, 1509–10 (10th Cir.1983), *cert. denied*, 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed. 2d 34 (1984). The determination of whether otherwise relevant evidence should be excluded, if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, is likewise left to the discretion of the trial court. Fed.R. Evid. 403; *United States v. Cummings*, 798 F.2d 413, 418 (10th Cir.1986). While evidence of other crimes, wrongs or acts is not admissible solely to prove a defendant's criminal disposition, such evidence may be admissible under Fed.R.Evid. 404(b)[6] to show knowledge, motive, intent or absence of mistake on the part of the actor. *United States v. Esch*, 832 F.2d 531, 535–36

6. Fed.R.Evid. 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible

(10th Cir.1987); *United States v. Cummings*, 798 F.2d at 417.

 The evidence of other acts was relevant, as it involved the sale of a semi-automatic weapon and parts to convert a semi-automatic weapon into a machinegun as well as communications between the undercover ATF agent and defendant concerning the possible purchase of a quantity of automatic weapons. In the course of the trial, defendant attempted to show that he was mistaken as to certain transactions and that he did not intend to commit any violations of federal law. The evidence thus tended to rebut defendant's assertions of mistake and lack of intent. *See United States v. Esch*, 832 F.2d at 536; *United States v. Cummings*, 798 F.2d at 418. The trial court did not abuse its discretion in admitting the evidence of other acts.

AFFIRMED.

for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.