**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Aaron CUCH, Defendant–Appellant.**

No. 87–1812.

United States Court of Appeals,
Tenth Circuit.

March 14, 1988.

---

Richard N.W. Lambert, Asst. U.S. Atty., and Brent D. Ward, U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Randy S. Ludlow, Salt Lake City, Utah, for defendant-appellant.

Before SEYMOUR and MOORE, Circuit Judges, and PHILLIPS,* District Judge.

PHILLIPS, District Judge.

## I.

Defendant-appellant Aaron Cuch was found guilty by a jury of aggravated sexual assault, a violation of 18 U.S.C. §§ 1153 and 2241(a), and possession of a firearm by a convicted felon, a violation of 18 U.S.C. § 922(g).

* The Honorable Layn R. Phillips, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

The trial court sentenced defendant to an eight year term of imprisonment on the sexual assault charge, to be followed by a three year probationary sentence on the firearms offense. On appeal the defendant challenges only his assault conviction contending that: 1) the trial court improperly admitted irrelevant and unduly prejudicial evidence of a prior sexual assault by the defendant and 2) there was insufficient evidence supporting the conviction. We affirm.

## II.

This case arises out of the defendant's assault of Mrs. Lana Boren, the manager of a convenience store located within Indian Country in the State of Utah. On the morning of January 24, 1987, Boren was working at the "Gotta Stop" convenience store on the Uintah–Ouray Reservation. Shortly after the store opened at 6:00 a.m., defendant Cuch entered the store and walked past the checkstand area. Another customer left the store, leaving the defendant and Boren alone. The defendant asked Boren if it was too early to check out video rental movies. Cuch was told he could check out movies anytime. The defendant then purchased a six-pack of soft drinks and left the store.

As the defendant left, Boren noted that Cuch's truck was parked in front of the store and that the first customer had not left the parking lot. When she next heard the door bell to the store ring, she turned to see the defendant coming through the door with a rifle in his hands. The defendant pointed the gun at her, grabbed her by the arm and told her to "get in the truck." Cuch then walked her out of the store to the driver's side of the truck, which had been left with the engine running. With the rifle under his arm, Cuch began shoving Boren into the driver's side of the truck. As Boren was partially inside the vehicle, she asked the defendant what he wanted. The defendant replied: "I want some pussy. I've got a knife and I'm going to cut your throat." [Transcript ("Tr."), Vol. III at 3–21].

Boren testified that this statement by the defendant snapped her out of shock. She then grabbed the rifle with both hands, jumped out of the truck, and began wres-

tling with the defendant in the parking lot. As Boren struggled towards the highway, Cuch tripped her and they both fell to the pavement. The defendant got on top of Boren, at which time a car containing four young men pulled into the parking lot. *Id.* at 22–24. One of the young men, after hearing Boren's screams for help, grabbed the rifle and shoved the defendant off Boren. Defendant was detained by the young men while Boren called the authorities. Two deputies from the local sheriff's office arrived shortly thereafter and the defendant was arrested at the scene.

Defense counsel's cross examination of Boren, the eye witnesses and the arresting officers focused almost entirely on the issue of intent. In an apparent effort to establish that the defendant did not intend to sexually assault Boren, defense counsel elicited evidence that the arresting officers had responded to a call involving "possible armed robbery", that defendant was under the influence of alcohol and that Boren had screamed that Cuch was "trying to kill her" and "threatened to cut her". [Vol. II at 31–32, 47, 49, 59, 61, 77, 89–90, 94–95, 102].

Defense counsel also questioned witnesses on their understanding of the term "pussy", and even suggested alternative interpretations of the defendant's statement "I want some pussy." *Id.* at 34–35, 50–51. According to defendant, as amply stated in his brief on appeal, there was "at this point ... confusion as to what the exact crime and nature of the crime which the defendant was attempting to commit at the 'Gotta Stop'." [Appellant's Brief at 12].

On the second day of trial, over the objection of defendant, the government introduced evidence of a prior similar assault committed by the defendant. Jaylene Gardner, a probation officer, testified that on August 28, 1979, she heard a knock on the door of her home located on the Uintah–Ouray Reservation. When she opened the door, the defendant pointed a rifle in her face and told her to be quiet or her "head would be blown off." Defendant then grabbed Gardner by the arm, and

forced her along the sidewalk to his waiting truck. Gardner's recollection was that the truck's engine had been left running. While still holding the rifle, Cuch instructed Gardner to get into the driver's side of the truck. Gardner complied with defendant's request and laid down on the front seat. Cuch then drove Gardner to a nearby riverbed, told her to get out of the car, lay down and raise her nightgown. The defendant then unbuttoned his pants, laid down on top of Gardner, and sexually assaulted her. [Vol. III at 123–128].

Defense counsel did not cross examine Gardner, and the government rested shortly thereafter. The defendant presented no evidence and the case was submitted to the jury, which subsequently found the defendant guilty on both counts. Defendant now challenges the sufficiency of the evidence pertaining to his assault conviction, as well as the admissibility of Gardner's testimony.

### III.

The determination of whether evidence is relevant lies within the sound discretion of the trial court, and the court's determination will not be reversed absent a clear showing of an abuse of that discretion. *United States v. Neal,* 718 F.2d 1505, 1509–10 (10th Cir.1983), *cert. denied,* 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984). The trial court also has broad discretion to determine whether otherwise relevant evidence should be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.* at 1510; *see* Fed.R.Evid. 403.

Evidence of other acts is not admissible solely to prove a defendant's criminal disposition. *United States v. Naranjo,* 710 F.2d 1465, 1467 (10th Cir.1983). Such evidence, however, may be admissible to show knowledge, motive or intent on the part of the actor.[1] *United States v. Mittleider,* 835 F.2d 769, 775 (10th Cir.1987); *United States v. Esch,* 832 F.2d 531, 535–36 (10th Cir.1987); *United States v. Cummings,* 798 F.2d 413, 417 (10th Cir.1986).

---

1. Fed.R.Evid. 404(b) provides:
   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

It is well settled that the rule is one of inclusion which admits evidence of other crimes relevant to an issue in a trial, unless the evidence is introduced for an impermissible purpose or undue prejudice is shown. *United States v. Turner,* 799 F.2d 627, 630 (10th Cir.1986); *United States v. Naranjo,* 710 F.2d 1467; *United States v. Espinoza,* 578 F.2d 224, 227 (9th Cir.), *cert. denied,* 439 U.S. 849, 99 S.Ct. 151, 58 L.Ed.2d 151 (1978) (Rule 404(b) is "a broad avenue through which many acts of prior and subsequent misconduct of those criminally accused may be admitted into evidence.")

██ On the other hand, this circuit has developed rigorous criteria for admitting evidence of other crimes, wrongs or acts pursuant to Rule 404(b). We have held that the government first bears the burden of demonstrating how the proffered evidence is relevant to an issue in the case. *United States v. Biswell,* 700 F.2d 1310, 1317 (10th Cir.1983). In demonstrating the relevance of proffered "other acts" evidence, "[t]he Government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts." *United States v. Kendall,* 766 F.2d 1426, 1436 (10th Cir.1985). Moreover, "[t]here must be a clear and logical connection between the alleged earlier offense or misconduct and the case being tried." *United States v. Biswell,* 700 F.2d at 1317–18.

██ Furthermore, before such evidence is properly admitted it must tend to establish intent, knowledge motive or one of the enumerated exceptions; must have real probative value, not just possible worth; and must be reasonably close in time to the crime charged. *United States v. Hogue,* 827 F.2d 660, 662–62 (10th Cir. 1987); *United States v. Morales–Quinones,* 812 F.2d 604, 612 (10th Cir.1987); *United States v. Franklin,* 704 F.2d 1183, 1189 (10th Cir.), *cert. denied* 464 U.S. 845, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983); *United States v. Engleman,* 648 F.2d 473, 478 (8th Cir.1981). Finally, even if the trial court determines that the "other acts" evidence satisfies the criteria for admission under Rule 404(b), it must balance the evidence's probative value and prejudicial effect under Fed.R.Evid. 403. *United States v. Hogue,* 827 F.2d at 663.

██ In the instant case, we find substantial compliance with the above stated requirements. The district court held a hearing outside the presence of the jury prior to Gardner taking the stand, at which time the government made a detailed proffer of the witness's proposed testimony pursuant to the court's request. Moreover, the prosecutor established that the testimony was both clear and convincing, as evidenced by the fact that Cuch had entered a plea of guilty to an assault charge arising out of the Gardner incident and had been sentenced to thirty months imprisonment. Finally, the prosecutor identified the 404(b) exception he was relying on, noting that the factual similarities "shed great light on what [Cuch's] *intent* was when he took Ms. Boren out of the convenience store." [Tr. Vol. III 116–118; emphasis added].

Defense counsel urged that the Gardner incident was too remote in time and that its probative value was outweighed by its prejudicial aspects. Further, defense counsel expressed concern that the government was attempting to merely show the defendant's violent disposition, stating that the government had evidence of a third incident involving the defendant's alleged attempted rape of a minister's wife, which incident had occurred between the time of the Gardner and Boren assaults. *Id.* at 119–120. The government, however, expressed no intention to offer evidence of this third assault. Further, the government acknowledged that it did not intend to mention the conviction of the defendant arising out of the Gardner assault. *Id.* at 117.

After considering the arguments presented by both sides, the court found the testimony admissible on the issue of intent. *Id.* at 121. The court, however, prohibited the government from introducing evidence concerning the defendant's use of alcohol at the time of the Gardner assault, as well as certain statements made by Cuch to Gardner after the assault. *Id.* Moreover, contrary to defendant's contention, the court gave a limiting instruction on the permissible use of such evidence.[2]

2. The Court instructed the jury as follows in its final charge:

Evidence that an act was done at one time, or on one occasion, is not any evidence or proof whatever that a similar act was done at another time, or on another occasion. That is to say, evidence that a defendant may have committed an earlier act of a like nature may not be

No contemporaneous limiting instruction was given at the time of the admission of Gardner's testimony. A contemporaneous instruction on the limited use of 404(b) evidence is preferably given both at the time such evidence is introduced and in the court's final charge. *United States v. Bridwell,* 583 F.2d 1135, 1140 (10th Cir. 1978); *United States v. Carleo.* 576 F.2d 846, 849–50 (10th Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978); *United States v. Halbert,* 640 F.2d 1000, 1006–1007 (9th Cir.1981). However, no such instruction was requested by defense counsel in this case. [*See* Vol. III 123–128]. *United States v. Tisdale,* 647 F.2d 91, 92 (10th Cir.1981). It is ordinarily the responsibility of defendant's counsel to request a limiting instruction. *United States v. Bridwell,* 583 F.2d at 1140. Moreover, as reflected by the trial record, this case proceeded directly from Gardner's testimony to jury instructions and closing arguments, during which the limiting instruction was given by the court and referenced in argument. [*See* Tr. Vol. III 128–130; excerpt of March 26, 1987 closing argument at 2].

We cannot find under the circumstances of this case that the trial court abused its discretion in admitting the evidence of other acts. Here the defendant's prior sexual assault on Gardner was relevant and probative on the *only* issue at trial—intent. In the course of the trial defendant attempted to establish that he did not intend to sexually assault Boren. Specifically, defense counsel attempted to establish that Cuch's conduct, while arguably constituting an attempted robbery, kidnapping or some other form of assault, did not represent a sexual assault. As acknowledged by the parties in the proceedings before the district court and at oral argument on appeal, the entire thrust of the defense in this case was that

the government had failed to establish beyond a reasonable doubt the defendant's specific intent to sexually assault Boren. The Gardner evidence thus tended to rebut defendant's assertions of lack of intent. *See United States v. Mittleider,* 835 F.2d at 775, *United States v. Esch,* 832 F.2d at 536.

The circumstances in this case are distinguishable from those in cases such as *Biswell,* where vague evidence of defendant's gambling and dealings in stolen property was offered without a clearly defined reason by the government in a trial for the unauthorized use and possession of food stamps. Likewise, the case is distinguishable from *United States v. Burkhart,* 458 F.2d 201 (10th Cir.1972), where a defendant's 1970 Dyer Act conviction in Missouri was reversed because the government introduced into evidence two prior Dyer Act convictions of the defendant, one of which occurred in Oregon in 1955 and the other in Mississippi in 1966. In *Burkhart,* the court of appeals held that "the extreme remoteness in time and space, together with the lack of any apparent similarity or connection with the principal charge" rendered the evidence of the prior convictions inadmissible. *Id.* at 204. In the instant case, the government set forth a clearly defined reason for the use of the prior act and also established a number of similarities between the Gardner and Boren assaults. Both instances involved assaults on women in Indian Country in the district of Utah in which the defendant threatened the victim with a rifle, forced the victim to his waiting truck, which had been left with the engine running, and shoved the victim into the car from the driver's side. The primary difference, as pointed out by defense counsel in his argument concerning undue prejudice, is that the Boren assault was halted in progress, whereas the Gard-

---

considered by the jury, in determining whether the accused committed any act charged in the indictment.

Nor may evidence of an alleged earlier act of a like nature be considered for any purpose whatever, unless the jury first finds that the other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused did the particular act charged in the particular count of the indictment then under deliberation.

If the jury should find beyond a reasonable doubt from other evidence in the case that the accused did the act charged in the particular

count under deliberation, then the jury may consider evidence as to an alleged earlier act of a like nature, in determining the state of mind or intent with which the accused did the act charged in the particular count. And where proof of an alleged earlier act of a like nature is established by evidence which is clear and conclusive, the jury may, but is not obliged to, draw the inference and find that, in doing the act charged in the particular count under deliberation, the accused acted willfully and with specific intent, and not because of mistake or accident or other innocent reason.

[Instruction No. 26; Record on Appeal].

ner incident involved Cuch successfully departing the area in his truck and sexually attacking his victim. While we agree that this evidence was prejudicial, it was also highly probative of Cuch's intentions with respect to Boren.

We also conclude that the prior assault of Gardner was not unduly remote in time so as to preclude admission under Rule 404(b). As this Court stated in *United States v. Franklin,* 704 F.2d 1183 (10th Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983): "[T]here is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case." *Id.* at 1189 (quoting *United States v. Engleman,* 648 F.2d 473, 479 (8th Cir.1981). A number of other courts have admitted evidence of other acts involving similar time gaps. *See, e.g. United States v. McCollum,* 732 F.2d 1419 (9th Cir.), *cert. denied,* 469 U.S. 920, 105 S.Ct. 301, 83 L.Ed.2d 236 (1984) (district court's ruling that evidence of twelve year old prior conviction was admissible under Rule 609 held harmless error as evidence would have been admissible under 404(b)); *United States v. Engleman,* 648 F.2d at 479 (no abuse of discretion when district court admitted evidence of crime that defendant committed thirteen years before charged offense); *United States v. Dudley,* 562 F.2d 965 (5th Cir.1977) (prior Dyer Act offense admissible under 404(b) as it occurred within six years of charged offense); *United States v. Ziedman,* 540 F.2d 314 (7th Cir.1976) (prior conviction which occurred within five years of charged offense admissible under 404(b)). Moreover, the seven and one half year time span between the Gardner assault and the Boren assault is somewhat misleading in that during part of this time period Cuch was serving a thirty month sentence on the Gardner assault.[3]

Finally, unlike the case of *United States v. Hogue,* 827 F.2d 660, 664 (10th Cir.1987), where the government made improper use of the 404(b) evidence in closing argument, here the defendant concedes that the prose-

cutor made proper limited use of the Gardner assault in his summation. [*See* Tr. of March 26, 1987 at 2].

## IV.

■ Defendant also challenges the sufficiency of the evidence in support of the sexual assault conviction. In assessing whether the evidence is sufficient to support the conviction, we must consider both the direct and circumstantial evidence, including reasonable inferences that can be drawn, in the light most favorable to the prosecution. *United States v. Welch,* 745 F.2d 614, 617 (10th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1364, 84 L.Ed.2d 384 (1985); *United States v. Shelton,* 736 F.2d 1397, 1401 (10th Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984).

■ Viewing the evidence in the light most favorable to the government, we find sufficient evidence that Cuch committed an aggravated sexual assault on Boren on the morning of January 24, 1984. The testimony of the victim Boren pertaining to defendant's conduct and his statements during the assault at the "Gotta Stop" convenience store in and of itself provides an ample basis for upholding the sufficiency of the assault conviction under the standards of this circuit.

AFFIRMED.

---

**3.** A similar tolling analysis is utilized under Rule 609 of the Federal Rules of Evidence, which places a ten year limitation on the use of prior convictions for impeachment purposes. Under Rule 609(b), the ten year period runs from "the date of the conviction or of the release of the witness from the confinement imposed for that conviction, *whichever is the later date....*" *Id.* (Emphasis added). In this case, Cuch assaulted Boren approximately five years from his release on the Gardner assault.