935 F.2d 268
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edgar Jeffrey ROJAS, Defendant-Appellant.
 No. 89-5569.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 7, 1991.
Decided May 31, 1991.
 
 1
 Appeal from the United States District Court for the Eastern District of North Carolina, at Fayetteville. W. Earl Britt, District Judge. (CR-88-40)
 
 
 2
 William Lee Davis, III, Lumberton, N.C., for appellant.
 
 
 3
 Thomas Ernest Booth, United States Department of Justice, Washington, D.C., (Argued), for appellee; Margaret Person Currin, United States Attorney, Frederick L. Borch, Assistant United States Attorney, Raleigh, N.C. on brief.
 
 
 4
 E.D.N.C.
 
 
 5
 AFFIRMED.
 
 
 6
 Before WIDENER, Circuit Judge, BUTZNER, Senior Circuit Judge, and REBECCA BEACH SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 
 7
 PER CURIAM;
 
 
 8
 Jeffrey Rojas challenges his conviction for aggravated sexual abuse. 18 U.S.C. Sec. 2241(a). He alleges that the district court improperly admitted evidence, that there was insufficient evidence to convict him, and that it improperly sentenced him. Because the evidence was properly admitted, there was ample evidence of his guilt, and he was sentenced properly, we affirm.
 
 
 9
 * Jeffrey Rojas met the victim, a sergeant in the United States Army, in July 1988, through his brother Captain Edwin Rojas. On August 3, 1988, Jeffrey called the victim and asked to come over to her house. She agreed, but only if Edwin accompanied him. Shortly after the two brothers arrived at the victim's house, Jeffrey demanded that the victim have sex with him. When she refused, he threw her to the floor and held a machete to her throat. When Edwin protested the abuse of the victim, Jeffrey, who was still wielding the machete, ordered him outside; Jeffrey later called his brother back inside.
 
 
 10
 Jeffrey then forced the victim to engage in various sexual acts with both himself and his brother. Edwin subsequently left, but Jeffrey continued to attack the victim. The next morning, the victim drove Jeffrey home. At that time, Jeffrey threatened to harm the victim and her family if she told anyone about the attack. Later that day, she reported the attack to army authorities. An army physician examined her and discovered small lacerations on her fingers. About one week later, Jeffrey called the victim and they talked about the crime; the victim recorded the conversation on her answering machine. During the conversation, Jeffrey admitted that he had done wrong.
 
 
 11
 Jeffrey was subsequently charged in count 1 with aggravated sexual abuse; count 2 aggravated sexual abuse by forcing his brother to assault the victim; and count 3, retaliating against the victim by threats. 18 U.S.C. Secs. 2241(a), 1513. The court dismissed count 2, and the jury acquitted him of the retaliation charge.
 
 II
 
 12
 As a preliminary matter, we note that there was ample evidence for the jury to find Rojas guilty of sexual assault. We uphold the sufficiency of the evidence if, taking the evidence in the light most favorable to the government, a reasonable jury could have found guilt beyond a reasonable doubt. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989). The victim's testimony was itself sufficient evidence. Her testimony was corroborated by the tape of her conversation with him. Neither is the conviction for aggravated sexual assault inconsistent with acquittal on the charge that Rojas retaliated against the victim. Those two crimes involve different factual requirements and took place at different times.
 
 III
 
 13
 Rojas challenges the district court's admission of a tape recording of a conversation that he had with the victim after the attack. He argues that the integrity of the tape was not properly proven: there are inaudible--and, Rojas asserts, deleted--portions of the tape. He asserts that the tape did not meet the standards for admission as evidence.
 
 
 14
 The trial judge has wide latitude in determining the admissibility of tape recorded evidence. United States v. Scaife, 749 F.2d 338, 345 (6th Cir.1984). The government properly authenticated the recording by the victim's testimony. Fed.R.Evid. 901(a); United States v. Lance, 853 F.2d 1177, 1181-82 (5th Cir.1988). Moreover, the trial court found the tape sufficiently reliable for use, although certain portions were unintelligible. Minor gaps will not, however, invalidate an entire tape. United States v. Mittleider, 835 F.2d 769, 773 (10th Cir.1987). The intelligible portions of the tape were properly admitted for their probative value.
 
 IV
 
 15
 Rojas next challenges the admission of testimony by the agent who arrested him. The prosecution asked the agent whether Rojas requested a lawyer. The agent testified that Rojas said that he did not need a lawyer because he "had been through all this before." Over Rojas's objection, the district court admitted this evidence.
 
 
 16
 Rojas contends that such testimony put his character into issue because it alerted the jury that he had previously been arrested. The prosecution contends that this question was designed to show that Rojas understood his Miranda rights.
 
 
 17
 Although it is improper for the prosecution to raise the issue of the defendant's past behavior unless the defendant has already put his character in issue, United States v. Johnson, 610 F.2d 194, 196 (4th Cir.1979), the testimony did not materially affect the verdict. Consequently, it is harmless error. Cf. United States v. Ezzell, 644 F.2d 1304, 1305 (9th Cir.1981).
 
 V
 
 18
 Rojas also challenges the admission of expert testimony from a physician who examined the victim. The physician testified that the victim's injuries were not inconsistent with her testimony that she was raped. Rojas objects that such testimony usurped the jury's fact-finding function by using the expert to give legal conclusions. See, e.g., United States v. Scoup, 846 F.2d 135, 142 (2d Cir.1988).
 
 
 19
 The Rules of Evidence allow experts broad latitude in their testimony. Experts may generally express their opinions, even if the opinion "embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a). In this case, the expert merely testified that the injuries were not inconsistent with the victim's testimony. He did not enter the prohibited area of testimony on whether the victim was telling the truth. United States v. Azure, 801 F.2d 336, 340-41 (8th Cir.1986). Such limited testimony as the expert gave in this case is permissible under the Fed.R.Evid. 704(a).
 
 VI
 
 20
 Rojas appeals his sentence on three grounds. First, he alleges that he should have received credit for acceptance of responsibility; second, that the court inappropriately adjusted his offense level upward for his role as leader of the offense. Finally, he challenges the district court's upward departure.
 
 
 21
 We review the district court's factual determination whether the defendant accepted the responsibility under the clearly erroneous standard. United States v. White, 875 F.2d 427, 431 (4th Cir.1989). The district court had ample evidence to conclude that Rojas did not deserve a reduction for acceptance of responsibility. For example, he never admitted that he raped the victim. At sentencing, he still maintained that the victim consented to sexual relations. Consequently, we will not disturb the district court's finding.
 
 
 22
 The district court increased Rojas's base offense level because it found that he instigated the attack. A defendant is liable for an upward adjustment if the government proves by a preponderance of the evidence that "the defendant was an organizer, leader, manager, or supervisor in any criminal activity...." U.S.S.G. Sec. 3B1.1(c). The district court's finding is reviewed under the clearly erroneous standard. United States v. Carajal, 905 F.2d 1292, 1295-96 (9th Cir.1990).
 
 
 23
 The district court had ample evidence to conclude that Rojas was an organizer. As the district judge said:
 
 
 24
 I would be absolutely derelict in my duty if I overlooked all of the evidence that I heard in the trial of this case as to who the organizer or leader of this activity was. He called [the victim] and perpetrated the false pretense to get himself and his brother into her home and he took a machete and he either actually or pretentiously forced his brother to have sex relations with the victim and the victim with his brother. Whether that was pretense or actuality, it exhibits a leadership role in the crime such that this court feels that the probation office is correct and that the two points should be added, as provided by section 3B1.1(c).
 
 
 25
 Rojas nevertheless argues that the upward adjustment of his sentence for organizing the attack violates the double jeopardy clause because the adjustment increases his sentence by taking into consideration count 2, forcing his brother to rape the victim, for which he had been acquitted. Rojas is mistaken. He is liable as an organizer under the sentencing guidelines because he instigated and directed the attack. He would be liable as an organizer whether or not his brother was a willing participant. United States v. Mejia-Orosco, 867 F.2d 216, 222 (5th Cir.1989).
 
 
 26
 The district court made an upward departure because of the heinous nature of the offense and because Rojas's criminal history category of IV did not adequately reflect his criminal history. District courts may depart only when "there exists an aggravating or mitigating circumstance, of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. Sec. 3553(b).
 
 
 27
 The first requirement for departure is satisfied because the sentencing guidelines explicitly acknowledge that upward departure may be necessary when the "defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim." U.S.S.G. Sec. 5K2.8. The guidelines also provide for departure when the "criminal history category significantly under-represents the seriousness of the defendant's criminal history." U.S.S.G. Sec. 4A1.3. The second requirement for departure is also satisfied, because the district court found that the guidelines did not adequately consider "the defendant's past criminal history and [the] outrageous conduct he perpetrated upon the victim." We review a factual determination that departure is warranted under the clearly erroneous standard. United States v. Brand, 907 F.2d 31, 33 (4th Cir.1990). In this case, there is ample supporting evidence: the defendant repeatedly attacked and humiliated the victim, and, because of plea bargains, his criminal history category underrepresented his past behavior.
 
 
 28
 We review whether the extent of departure is reasonable under an abuse of discretion standard. United States v. Summer, 893 F.2d 63, 66 (4th Cir.1990); 18 U.S.C. Sec. 3742(f)(2). In computing the departure, the district court followed the general principles of the guidelines: it increased his base offense level by one, to 34, and his criminal history category by one, to V. It then sentenced Rojas to 327 months, which is the maximum sentence allowable with base offense level 34 and criminal history V. Such departure, which is within the discretion contemplated by the guidelines, is reasonable.
 
 
 29
 AFFIRMED.