No. 74,225

STATE OF KANSAS, *Appellee*, v. KENT D. VANDERVEEN, *Appellant*.

(915 P.2d 57)

Opinion filed April 19, 1996.

*John J. Ambrosio*, of John J. Ambrosio, Chartered, of Topeka, argued the cause, and *Kathleen A. Downey*, of the same firm, was with him on the brief for appellant.

*Joel W. Meinecke*, first assistant district attorney, argued the cause, and *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant was convicted of two counts of first-degree murder in the shooting deaths of his parents. On appeal he claims that he was denied his statutory right of allocution and that the trial court abused its discretion in imposing consecutive life sentences.

Kent Vanderveen lived with his parents. In April 1993, the 18-year-old Vanderveen shot each of his parents three times while they were asleep in adjoining rooms in their home. Vanderveen had purchased the ammunition that morning. After the shootings, Vanderveen hid the gun under a tree in a nearby field and went to Lawrence. He later directed police to the gun's location.

Vanderveen told psychologists that he remembered having two fights with his father that evening. During the first fight his father punched him in the face. Vanderveen left the house and consumed approximately four drinks at restaurants. When Vanderveen returned home, his father was waiting for him, and a second fight ensued. Vanderveen claimed he could not remember the killings.

Vanderveen pleaded no contest to two counts of first-degree premeditated murder. The sentence for first-degree premeditated murder, a class A felony, is life imprisonment. The sole question at the sentencing proceeding was whether the sentences should run concurrently or consecutively. See K.S.A. 21-4501(a); K.S.A. 21-4608. If the sentences were concurrent, Vanderveen would be eligible for parole in 15 years; if consecutive, Vanderveen would be eligible for parole in 30 years. K.S.A. 22-3717(b)(3), (c).

K.S.A. 22-3422 and K.S.A. 22-3424(e) provide the defendant with statutory rights known as allocution. K.S.A. 22-3422 requires that before imposing judgment the court shall ask the defendant whether he or she has "any legal cause to show why judgment should not be rendered." K.S.A. 22-3424(e)(4) requires that before imposing sentence the court shall "address the defendant personally and ask the defendant if the defendant wishes to make a statement on the defendant's own behalf and to present any evidence in mitigation of punishment." The sequence of events at the sentencing hearing is crucial to the defendant's claim that he was denied allocution.

To explain the reason for commission of the offense the defense presented the testimony of two psychologists. They testified that several stressors led to the shootings, including (1) 2 years earlier Vanderveen's child was born and adopted, and Vanderveen was also adopted; (2) a friend committed suicide a month earlier, and Vanderveen's father controlled whether Vanderveen would drive

his parents' car to the funeral or stay overnight; and (3) Vanderveen fought with his father the night of the shootings. The psychologists stated that Vanderveen appeared to have been in a disassociative state at the time of the shootings. They also testified that it would not have been predicted Vanderveen would kill his parents and that he was unlikely to kill again. A report prepared by the Topeka Correctional Facility (TCF) indicated that Vanderveen was suicidal. Although the TCF report could be interpreted differently, defense counsel and the psychologists suggested that TCF was recommending that the sentences be served concurrently due to the suicide risk. The psychologists agreed that the sentences should run concurrently. The State urged that the sentences be consecutive.

After presenting evidence in mitigation, defense counsel John Ambrosio addressed the judge on behalf of the defendant:

"It is my view based on the evidence, it is my argument based on the evidence, based on what the psychologists say, based on the uncontroverted SRDC report, based on the Larned report, that these be run together. He's not gonna be a young man when he gets out, he's gonna be a changed man and he's gonna live with what he did for the rest of his life. That is also punishment, maybe not enough, but it is punishment."

The court then stated:

"The defendant stands before the Court having pled guilty to—or rather nolo contendere to two counts of murder in the first degree. It seems to me having reviewed all of the reports from Larned Reception and Diagnostic Center, Court Services, that the mental health professionals are somewhat puzzled about why this horrible tragedy occurred."

At that point, Ambrosio asked to approach the bench. At oral argument, Ambrosio stated that at this bench conference he had informed the judge that his client would exercise his statutory rights of allocution. The judge acknowledged defense counsel's comment and continued:

"It seems to me to impose concurrent sentences for two counts of first degree murder is to diminish the value of the lives of one or both of the victims. But perhaps more importantly, I am not persuaded that these types—this type of behavior might not occur again. All of us in our lives are subjected from time to time to stresses and conflicts, but we don't react in this fashion. It seems to me

that past behavior is a fairly good predictor of future behavior, it certainly is important to consider. I'm not persuaded that Mr. Vanderveen does not impose a threat to society. I think the fairer statement, as far as Dr. Albott's testimony is concerned, that in his present state he may very well constitute a threat to society, but given the individual he would not. Perhaps that's true. Unfortunately, I doubt that individual psychotherapy is going to be available in our present correctional system.

"Having reviewed the criteria set forth in K.S.A. 21-4606 it does appear to me that these crimes were premeditated and he did go out and purchase fresh ammunition when old ammunition was available. It's true that there was an altercation with his father the night before these crimes occurred, but the murders were not a spontaneous reaction to that. The victims were in effect executed, apparently that *[sic]* their sleep, and I don't think it can be fairly said that the victims in any way provoked what happened. For those reasons I feel it's my duty to impose consecutive sentences in this case. Albeit a melancholy duty, but I feel it is my duty.

"Mr. Vanderveen, will you come forward, please."

The defense counsel then asked to make a record, and the following exchange occurred.

"[Mr. Ambrosio:] For the benefit of the record I believe that the Court has already determined the sentence before giving the defendant allocution. I think— I don't think, the law says you make findings and then give allocution. I think he has a right to allocution and then you make findings, therefore at this point and time I'm gonna move for the Court not to sentence and I'm gonna move that this be transferred to another division for sentencing because I think you've made your mind up. And I apologize for having to say this, Judge, but I think you've made your mind up before my client has had a right to address the Court and it is my understanding, was it not, that you were gonna say something to the Court; is that correct?

"THE DEFENDANT: That is correct.

"THE COURT: I intend to give him a right of allocution and I did not mean to indicate that I had made my mind up before hearing what Mr. Vanderveen had to say. But—

"MR. AMBROSIO: I thought the need to make my record, Your Honor.

"THE COURT: I understand.

"Mr. Vanderveen, is there anything that you want to say to the Court or any further evidence that you want the Court to consider by way of mitigation?

"THE DEFENDANT: I stayed up last night trying to figure out what to say. I knew I was gonna say something, but I don't really know what to say. I'd like to say that I am truly sorry for what has happened. I wish I could explain in some how, give some sort of explanation why this happened. But I mean I don't even understand myself really because doctors—I have told the doctors stuff, I don't

remember everything that's happened. I don't really understand myself why this happened, so I can't really expect anybody else to understand either. I don't think this reflects the type of person I am. Like I say, I can't explain why this happened, I am truly sorry and whatever happens today, whether I'm in prison or whether I'm not, I still have to live with what I did. And to me as a person that's greater than anything else, is me having to live with this.

"MR. AMBROSIO: I renew my objection for the record, if you could just rule on my objection.

"THE COURT: Is there any legal reason—

"MR. AMBROSIO: Yes, the legal reason is as follows: The defendant was not given his right of allocution before the Court made findings about the sentence, consequently it is my belief that this will be an improper sentence and it should be transferred to another division for a full sentencing hearing as the Court obviously made up his mind prior to the allocution.

"That's all I have, Your Honor.

"THE COURT: All right.

"MR. AMBROSIO: I'd like a ruling on that.

"THE COURT: I'll overrule your objection.

"It's the judgment and sentence of the Court as to Count 1, that the defendant be incarcerated in the custody of Secretary of Corrections for life. Court will impose the same sentence as to Count 2. The sentences in this case are to be served consecutively.

"If there's nothing further, the defendant's remanded to custody."

## ALLOCUTION

Vanderveen argues that he was denied his statutory right to allocution before sentence was imposed. Vanderveen points out that the trial judge did not ask him whether he wished to make a statement in mitigation of punishment until after the judge indicated it was his duty to impose consecutive sentences. He also contends that the judge did not ask him if there was any legal reason why sentence should not be imposed before imposing the sentence.

As authority to set aside his sentence and require resentencing by another judge, Vanderveen cites *State v. Heide*, 249 Kan. 723, 822 P.2d 59 (1991). Heide pleaded guilty to several crimes. At the sentencing hearing, the State made its argument and sentence recommendations. The trial judge then asked Heide's counsel for his comments. Heide's counsel emphasized Heide's psychological problems and his low risk of recidivism if treatment continued and asked that a lesser sentence be imposed. The judge then asked Heide if there was any legal reason why sentence should not be

imposed. When Heide responded negatively, the judge imposed the sentences recommended by the State. The judge then addressed the issue of probation. The prosecutor reminded the judge that Heide's counsel had indicated Heide wanted to say something. The judge then asked Heide if he wanted to make a comment. The judge did not specifically ask if Heide wished to present evidence in mitigation of sentence prior to sentencing Heide.

On appeal, Heide claimed he was denied his right to allocution before sentence was imposed. The State asserted that Heide was given allocution when the judge asked him if there was any legal reason why sentence should not be imposed. 249 Kan. at 727. The *Heide* court disagreed, holding that the trial judge's inquiry before sentencing pursuant to K.S.A. 22-3422 as to whether there was any legal reason why sentence should not be imposed was insufficient to satisfy Heide's right under what is now K.S.A. 22-3424(e) to make a statement on his own behalf and to present evidence in mitigation of punishment. 249 Kan. at 730. The *Heide* court also rejected the State's argument that a sentence is not "imposed" until the defendant is ordered into custody and held that sentence is imposed when pronounced by the trial judge. 249 Kan. at 730-31.

Although *Heide* is instructive as to Vanderveen's argument that he was denied allocution under K.S.A. 22-3424(e)(4) before sentence was imposed, it is not authority for the relief Vanderveen requests here. One of the most important judicial responsibilities is that of sentencing. While there are general guidelines within the statutes, there are no hard and fast rules set out. The judge considers what sentence is required for the protection of the public, while examining what is in the best interest of the individual to correct his or her unacceptable conduct. Here, it was necessary for the judge to determine whether rehabilitative measures could be effected by imposing concurrent sentences or whether imposing consecutive sentences for the maximum period of incarceration was necessary to punish the defendant and protect society.

Each judge is allowed to develop his or her personal technique for imposing sentence. The judge should not add his or her personal condemnation of the offender or underemphasize the seriousness of the offense. The sentence must be pronounced in a

careful, understandable manner. Prior to imposing sentence, the judge may explain to the defendant the seriousness of the offense and the burden the defendant must overcome to mitigate punishment.

The record here reveals that the sentencing judge satisfied K.S.A. 22-3424(e)(4). After explaining the seriousness of the offense and the burden necessary for the imposition of concurrent sentences, the judge addressed Vanderveen and asked if there was anything Vanderveen wanted to say or any further evidence he wanted the court to consider by way of mitigation. While the judge did not make this inquiry of Vanderveen until after the judge had indicated he felt it was his duty to impose consecutive sentences, the inquiry was made before the judge actually imposed the consecutive life sentences.

Vanderveen also argues that the inquiry required by K.S.A. 22-3422 as to whether there was any legal cause why judgment should not be rendered was not made until after sentence was imposed. The court asked, "Is there any legal reason—," and Ambrosio immediately responded, "Yes, the legal reason is as follows." As with the inquiry required by K.S.A. 22-3424(e)(4), the 22-3422 inquiry whether there was any legal cause why judgment should not be rendered was made before the consecutive life sentences were imposed. There was no denial of allocution here.

## SENTENCING

Vanderveen next argues that the judge abused his discretion in imposing consecutive life sentences. He stresses the testimony of the psychologists that concurrent sentences were appropriate. Vanderveen asserts that after evaluating the evidence presented at the sentencing hearing, a reasonable person would conclude that concurrent sentences should be imposed.

It is the sentencing judge alone who determines the appropriate sentence to be imposed or other disposition of the case by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, and the public safety. A sentence imposed within the statutory guidelines will not be disturbed on

appeal if it is within the trial court's discretion and not a result of partiality, prejudice, oppression, or corrupt motive. See *State v. McDonald*, 250 Kan. 73, Syl. ¶ 4, 824 P.2d 941 (1992). However, the sentencing judge's discretion "is not boundless and is to be exercised with regard to what is right and equitable under the circumstances." *State v. Bailey*, 251 Kan. 527, Syl. ¶ 3, 834 P.2d 1353 (1992). The standard for determining whether a sentencing judge abused his or her discretion in sentencing is set out in *State v. Heywood*, 245 Kan. 615, 621, 783 P.2d 890 (1989): The party asserting that the court abused its discretion bears the burden of showing such abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. Stated another way, judicial discretion is abused only where no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. See *Taylor v. State*, 251 Kan. 272, Syl. ¶ 3, 834 P.2d 1325 (1992); *State v. Brown*, 249 Kan. 698, Syl. ¶ 10, 823 P.2d 190 (1991).

After reviewing the transcript of the sentencing hearing, we find that reasonable persons could differ as to whether concurrent or consecutive sentences should be imposed. The trial court did not abuse its discretion by imposing consecutive sentences.

Affirmed.