(118 P.3d 1291)
No. 93,024

STATE OF KANSAS, *Appellee*, v. JOHNNY BAXTER, *Appellant*.

Opinion filed September 9, 2005.

*Matthew J. Edge*, assistant appellate defender, for appellant.

*Ellen Mitchell*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before ELLIOTT, P.J., MALONE and MCANANY, JJ.

MCANANY, J.: Johnny Baxter and another man stole and later damaged and abandoned a Chevrolet van owned by Gateway Outdoor Advertising Company (Gateway). The van was used in Gateway's billboard advertising business. It was equipped with an aluminum scaffold and hooks used for installing advertisements on billboards. These items were missing when the van was recovered. Baxter pled guilty to theft and was sentenced to 12 months' probation, with an underlying sentence of 6 months in the county jail.

At a separate restitution hearing, Neil Phalen, a representative of Gateway, testified that he bought the scaffold in approximately 1990 for $800. The only company that manufactured the scaffold is no longer in business. Phalen testified that a welding company had stated it could fabricate a new scaffold for a cost of approximately $1,500 to $1,600. Phalen replaced his scaffold approximately every 20 years, but his inspection of this particular scaffold before the theft disclosed that it was in good condition. Phalen also claimed the scaffold was a unique tool.

Baxter objected to awarding Gateway the full replacement cost for the scaffold. The judge ruled:

"Well, the purest form of justice is to put the victim back to where they were before such an act was committed. Now, this scaffolding looks to me like it's a unique piece of equipment, unique to the business. For instance, [a] musician may have an old violin. That doesn't mean that it's not worth to that musician what it was years ago.

. . . .

"Certainly not Mr. Phalen's fault that he's missing the property. And, it looks to me like that's a unique piece of equipment that you can't buy in the open market. And, I think that in this case restitution would encompass what he paid for, or what he's got to pay to get it replaced, so that will be my order, okay?"

The ultimate restitution order included the full replacement cost for the scaffold. Baxter now appeals from that order. Because the district court used the replacement value of the scaffold that was lost, rather than its current fair market value, we must set aside that portion of the restitution order relating to the scaffold and remand for further proceedings to determine an appropriate restitution order for its loss.

A sentencing court has wide discretion in ordering restitution and in selecting the manner in which it is calculated. The rigorous standards for proof of damages in a civil action do not apply in calculating an amount of restitution in a criminal case. Nevertheless, the victim is not entitled to restitution that exceeds the amount of the loss. See *State v. Casto*, 22 Kan. App. 2d 152, 153-54, 912 P.2d 772 (1996). In calculating restitution for a loss involving personal property, the item's fair market value is the usual standard. *State v. Rhodes*, 31 Kan. App. 2d 1040, Syl. ¶ 2, 77 P.3d 502 (2003).

Kansas courts have consistently held that an award of restitution that exceeds fair market value constitutes an abuse of discretion. See, *e.g.*, *State v. Hunziker*, 274 Kan. 655, 664, 56 P.3d 202 (2002); *Rhodes*, 31 Kan. App. 2d at 1042-43; *Casto*, 22 Kan. App. 2d at 154; *State v. Hinckley*, 13 Kan. App. 2d 417, 419, 777 P.2d 857 (1989).

Here, the district court valued the scaffold based upon its replacement cost, not its fair market value. The district court reasoned that the value Phalen claimed it would cost to replace the scaffolding was appropriate since it was a unique piece of equipment that one cannot buy on the open market. In reaching this conclusion, the district court's analogy of an old violin is incomplete. True, a high quality old violin is often worth more than its original purchase price. One of the world's most famous, the "Soil" Stradivarius built by Antonio Stradivari in 1714 and now owned and played by Itzhak Perlman, is worth millions of dollars today. Though it is unique, its value, nevertheless, is based on the market. If there is a market for old Stradivarius violins, we doubt that there is no market for used scaffolds. Or, at least, there was no evidence to that effect.

Here, there was simply no evidence presented on the price that a willing seller and a willing buyer would agree upon in the sale of a scaffold of comparable age and condition in an arm's-length transaction. Nor was there any evidence that Phalen inquired of other outdoor advertising companies about such a transaction. Given the number of outdoor advertising companies in the state, it is hard to imagine that none would part with such a scaffold if the price were right and if Gateway were willing to pay it. That price, with an upper limit of the $1,600 replacement cost, would establish the fair market value that is the required basis for a sustainable restitution order.

Baxter argues that the court should apply a straight-line depreciation schedule to the scaffold. He reasons that if it had a useful life of 20 years and was 16 years old at the time of the theft, its value was only 20% of its original cost. Anyone who has sold a new car a few months after its original purchase will confirm that straight-line depreciation is not always an accurate measure of fair

market value. The buyer who paid $2,032,000 for the 1699 "The Lady Tennant" Stradivarius violin in 2005 certainly did not think so. Depreciation is a factor to be considered, but it does not trump the ultimate test: the fair market value of the item in an arm's-length sale.

Restitution order vacated with respect to the amount attributed to the scaffold, and remanded for further proceedings.