(274 P.3d 704)

No. 105,222

STATE OF KANSAS, *Appellee*, v. AUSTIN J. BEHRENDT, *Appellant*.

Rev'd in part and remanded by S. Ct. order May 6, 2014.

. Opinion filed April 27, 2012.

*Charles A. O'Hara*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., GREEN, J., and LARSON, S.J.

GREEN, J.: Austin J. Behrendt pled no contest to a felony charge of theft. The trial court imposed a guidelines sentence of 6 months in prison. The trial court further ordered that Behrendt serve a 45-day jail sanction followed by 12 months of probation. In addition, the trial court ordered restitution to the victim in the amount of

$7,870.55. On appeal, Behrendt contends that the trial court erred in relying on the retail value of beer, a perishable good, instead of the wholesale value in calculating the amount of restitution. We agree. Accordingly, we reverse, vacate the amount of restitution awarded, and remand to the trial court to determine the amount of restitution owed based on the wholesale cost of the crime victim's inventory.

In addition, Behrendt asserts that the trial court erred in ordering him to serve 45 days in jail as a condition of probation. We disagree and affirm this issue. Accordingly, we affirm in part, reverse in part, vacate in part, and remand with directions.

Behrendt was employed by City Beverage, a beer distributor located in Hutchinson, Kansas. Behrendt was charged under an amended complaint with felony theft for stealing beer from City Beverage valued between $1,000 and $25,000 in violation of K.S.A. 21-3701(a)(2). He was also charged with conspiracy to commit felony theft and with selling liquor without a license, a misdemeanor. Behrendt later pled no contest to one count of felony theft. In exchange for Behrendt's no contest plea, the State agreed to dismiss the other charges and agreed to recommend that Behrendt receive probation without jail time.

At Behrendt's plea hearing, the trial court advised Behrendt about the consequences of entering a no contest plea and told him that it was not bound to follow his plea agreement with the State. Behrendt stated that he understood the court was not bound by the agreement, and he reiterated his wish to plead no contest to the felony theft charge. At sentencing, the State complied with the plea agreement and recommended that the trial court sentence Behrendt to probation instead of jail. The State also requested that Behrendt pay City Beverage restitution in the amount of $7,870.55 as a condition of his probation.

The trial court imposed an underlying sentence of 6 months in prison and placed Behrendt on probation for 12 months. As conditions of Behrendt's probation, the trial court required him to pay $7,870.55 in restitution to City Beverage and to serve 45 days in jail. The trial court, however, allowed Behrendt the right to request a restitution hearing within 30 days to challenge its restitution cal-

culation. Within the required 30 days, Behrendt filed a motion to determine restitution.

The trial court held a hearing to determine the appropriate amount of restitution. Ann Bush, co-owner of City Beverage, testified that her company suffered a loss of $7,870.55 because of Behrendt's theft. She calculated the loss by using the retail price that City Beverage would have received from its customers for the stolen beer.

At the conclusion of the restitution hearing, the parties argued their opposing positions on the amount of restitution Behrendt should be required to pay for his crime. The State insisted the court should order Behrendt to pay restitution totaling $7,870.55, which was the full amount requested by City Beverage. Behrendt disagreed, however, and argued that he should be required to pay only City Beverage's wholesale cost of the stolen inventory. Agreeing with the State, the trial court ordered Behrendt to pay $7,870.55 in restitution for City Beverage's retail price of the beer. The trial court explained that $7,870.55 was the appropriate amount of restitution because City Beverage was "in business and they did lose the profit and plus the . . . actual costs of the beer."

*Did the Trial Court Err in Relying on the Retail Value of Beer Instead of the Wholesale Value of the Beer when Calculating Restitution?*

Behrendt argues that the trial court erroneously ordered him to pay City Beverage the retail value of their beer, which resulted in a windfall to the beer distributor. Behrendt maintains that he should have to pay restitution only for City Beverage's actual cost of beer, not for the beer's retail value.

Neither party disputes that the trial court could order Behrendt to pay restitution as a condition of his probation under K.S.A. 21-4610(d)(1), which provides in pertinent part:

"(d) In addition to any other conditions of probation, . . . the court shall order the defendant to comply with each of the following conditions:

(1) Make reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime, in an amount and manner determined by the court and to the person specified by the court . . . ."

See also *State v. Phillips*, 45 Kan. App. 2d 788, 794, 253 P.3d 372 (2011) (recognizing "[t]he appropriate amount of restitution is the amount required to reimburse the victim for the actual loss suffered") (citing *State v. Hunziker*, 274 Kan. 655, 664, 56 P.3d 202 [2002]); *State v. Casto*, 22 Kan. App. 2d 152, 154, 912 P.2d 772 (1996) (property crime victim entitled to restitution only up to amount of his or her actual loss).

Kansas appellate courts have held that fair market value (FMV) is the common standard for calculating restitution for a victim's loss of, or damage to, an item because of a defendant's crime. See, e.g., *State v. Maloney*, 36 Kan. App. 2d 711, 714-15, 143 P.3d 417, *rev. denied* 282 Kan. 794 (2006); *State v. Baxter*, 34 Kan. App. 2d 364, 365, 118 P.3d 1291 (2005); *State v. Rhodes*, 31 Kan. App. 2d 1040, Syl. ¶ 2, 77 P.3d 502 (2003).

When considering restitution, this court has defined FMV as "the price that a willing seller and willing buyer would agree upon . . . in an arm's-length transaction." *Baxter*, 34 Kan. App. 2d at 366. When FMV cannot readily be determined, a court may consider other factors, such as the item's purchase price and condition, so long as the valuation is based on reliable evidence that yields a defensible restitution figure. *Maloney*, 36 Kan. App. 2d 711, Syl. ¶ 5.

When discussing orders of restitution under K.S.A. 21-4610(d)(1), our Supreme Court has declared:

"The amount of restitution and manner in which it is made to the aggrieved party is to be determined by the court exercising its judicial discretion and is subject to abuse of discretion review. [Citation omitted.] 'Although the rigidness and proof of value that lies in a civil damage suit does not apply in a criminal case, the court's determination of restitution must be based on reliable evidence which yields a defensible restitution figure.' [Citation omitted.] Because [K.S.A. 21-4610(d)(1)] limits the imposition of restitution to 'damage or loss caused by the defendant's crime,' the question of whether an item claimed by the aggrieved party as loss qualifies for inclusion in a restitution order because it was caused by the defendant's offense is a question of law. [Citation omitted.]" *Hunziker*, 274 Kan. at 660.

Behrendt challenges the trial court's legal conclusion that he should pay restitution in the amount of the beer's retail value. In particular, Behrendt argues that City Beverage's expected profits

for the beer that he was convicted of taking did not qualify for inclusion in the restitution order. This court has de novo review over that question of law. See *Hunziker*, 274 Kan. at 660.

Behrendt's first argument requires this court to determine the FMV of City Beverage's beer inventory. As previously mentioned, the FMV for an item is "the price that a willing seller and a willing buyer would agree upon . . . in an arm's length transaction." *Baxter*, 34 Kan. App. 2d at 366. At the restitution hearing, the co-owner of City Beverage (Bush) equated the missing beer's FMV with its retail value. The relevant portion of the transcript reads as follows:

"[DEFENSE COUNSEL]: What you're trying to do is to get your profit as part of the loss; isn't that true?

"[WITNESS BUSH]: That's correct.

"[DEFENSE COUNSEL]: And you never sold the beer that you have missing; did you?

"[WITNESS BUSH]: No, it was lost. I could not sell it.

"[DEFENSE COUNSEL]: So you never got the profit; did you?

"[WITNESS BUSH]: That's correct.

"[DEFENSE COUNSEL]: And since you didn't get the profit, your loss was what you paid for it; isn't that correct?

"[WITNESS BUSH]: Not the way I see it."

Generally, our appellate courts have ruled that an award of restitution that exceeds an item's FMV constitutes an abuse of discretion. See, *e.g.*, *Hunziker*, 274 Kan. at 664; *Baxter*, 34 Kan. App. 2d at 366; *Rhodes*, 31 Kan. App. 2d at 1042; *Casto*, 22 Kan. App. 2d at 154; *State v. Hinckley*, 13 Kan. App. 2d 417, 419, 777 P.2d 857 (1989).

On appeal, Behrendt argues that the trial court erred in relying on the beer's retail value instead of its wholesale value when calculating restitution. In other words, Behrendt maintains that the trial court erred because it awarded City Beverage restitution for its missing beer in excess of FMV. In support of his argument, Behrendt relies on *State v. Hall*, 45 Kan. App. 2d 290, 247 P.3d 1050 (2011). Behrendt contends that *Hall* is directly on point with the facts of this case. The State does not dispute this, but instead relies on Supreme Court Rule 8.03(i) (2011 Kan. Ct. R. Annot. 69) to argue that *Hall* is inapplicable.

Supreme Court Rule 8.03(i), in pertinent part, reads as follows:

"The timely filing of a petition for review shall stay the issuance of the mandate of the Court of Appeals. Pending the determination of the Supreme Court on the petition for review or during the time in which to file a petition for review, the opinion of the Court of Appeals is not binding on the parties, or on the district courts. Any interested person who wishes to cite a Court of Appeals opinion for persuasive authority before the mandate has issued shall note in the citation that the case is not final and may be subject to review or rehearing. If a petition for review is granted, the decision or opinion of the Court of Appeals has no force or effect, and the mandate shall not issue."

Here, our Supreme Court granted a petition for review in *Hall* on September 23, 2011. So, the State is correct in that the *Hall* court's decision has no force or effect in this case. But even though *Hall* is not binding precedent, this court can draw guidance from its reasoning.

In holding that the trial court had erred when it based restitution on the inventory's retail value, instead of its wholesale cost, the *Hall* court relied on *Illinois Cent. R. Co. v. Crail*, 281 U.S. 57, 50 S. Ct. 180, 74 L. Ed. 699 (1930). In that case, the United States Supreme Court had to decide whether the plaintiff should be compensated based on the wholesale market price of coal or should be compensated on the retail market price. The plaintiff, an established coal dealer, purchased at wholesale prices a carload of coal at $5.50 per ton plus $3.30 per ton freight charges, which it proposed to resell for $13 per ton to its retail customers. The rail carrier of the plaintiff's coal cargo arrived at the delivery point with a shortage of 5,500 pounds of coal. When the delivery was made, the plaintiff had not contracted to sell any of the coal and intended to simply add the coal to his current inventory. The plaintiff sued, maintaining that it should be awarded the $13 per ton retail value of the undelivered coal. Noting that the plaintiff purchaser "lost no sales by reason of [the delivery shortage]," and finding that plaintiff could have purchased the missing coal at the $5.50 per ton wholesale price, the Court awarded damages based on the wholesale market price. See 281 U.S. at 62-64.

Like the plaintiff in *Illinois Central,* City Beverage purchased its inventory at an amount less than the retail value. The trial court's ruling incorrectly identified the seller and the buyer in the arms-length transaction as City Beverage and the entities that it pur-

chased its beer from, not the entities that purchase beer from City Beverage. In other words, the actual loss suffered here is the FMV (the wholesale market price) that City Beverage, as the victim, paid for the items taken by Behrendt, not the amount City Beverage would have received had its customers been able to purchase that inventory at retail prices.

Thus, when the trial court awarded retail prices to City Beverage it did not produce a fair result because it allowed City Beverage to receive a windfall. Behrendt was only responsible for restitution for the loss suffered by City Beverage as a result of his crime. Any award of restitution that exceeds the beer's FMV constitutes an abuse of discretion. See, e.g., *Hunziker*, 274 Kan. at 664. Consequently, the trial court erred in basing restitution on the inventory's retail market value, as opposed to City Beverage's wholesale cost of the beer inventory.

The 10th Circuit Court of Appeals uses a similar approach when determining the value of stolen merchandise. See *U.S. v. Cummings*, 798 F.2d 413 (10th Cir. 1986). In that case, Cummings was convicted in the trial court of selling a stolen tractor in violation of 18 U.S.C. § 2315. On appeal, Cummings challenged the court's value calculation of the stolen tractor. In reaching its decision, the 10th Circuit noted the following rules for calculating "market value":

"The market value of stolen property . . . is that price which a willing buyer would pay a willing seller either at the time and place that the property was stolen or at any time during the receipt or concealment of the property. [Citations omitted.] When merchandise is stolen from a merchant, market value is the sales price the merchant would have obtained for the merchandise. [Citation omitted.] Thus, where the victim is a retail merchant, the market value is the retail sales price, [citation omitted] and where the victim is a wholesale merchant, the market value is the wholesale price. [Citations omitted.]" *Cummings*, 798 F.2d at 416.

In this case, City Beverage, as a beer distributor, would qualify as a wholesale merchant. Indeed, Bush testified that her business was a beverage wholesaler and that her business primarily sold Anheuser-Bush products. This would indicate that the market value of its stolen beer would be its wholesale price. In other words, City Beverage's market value is the amount that it paid for its beer

inventory, not the amount that it would receive by selling that inventory.

Assuming arguendo that City Beverage is entitled to seek lost profits, its evidence as to lost profits is too speculative. To establish the dollar value of its loss, Bush testified that she calculated the loss by using the retail price that City Beverage would have received from its customers for the stolen beer. Yet, City Beverage used current retail pricing for the stolen beer instead of the retail pricing that it charged when the beer was stolen. Moreover, City Beverage failed to disclose what its actual costs were for the stolen beer. In addition, City Beverage did not identify any prospective purchasers for the stolen beer at prices like those paid by customers when the beer was stolen. Finally, there was no evidence that City Beverage would have had customers for the beer when it was stolen.

Behrendt's responsibility for the loss of the beer did not relieve City Beverage of its obligation to show that there were customers for the stolen beer. City Beverage retained the responsibility to produce sufficient evidence of its lost profits. Although mathematical precision was not required in calculating lost profits, a restitution award must yield a defensible figure in the evidence. We conclude, given the absence of the price paid for the beer and what City Beverage's customers were willing to pay for the beer had it not been stolen, that the evidence of lost profits was speculative. Hence, the trial court erred in awarding lost profits to City Beverage.

*Did the Trial Court Err in Ordering Behrendt to Serve 45 Days in Jail as a Condition of His Probation?*

Next, Behrendt contends that the trial court erred in ordering him to serve 45 days in jail as a condition of his probation. The State refutes Behrendt's contention, arguing that the trial court did not err in ordering jail time as a condition of Behrendt's probation.

This issue requires this court to determine if the trial court abused its discretion in ordering Behrendt to serve jail time as a condition of his probation. In felony cases, K.S.A. 21-4610(c)(14)

allows a court to impose up to a 60-day jail term as a condition of probation.

"A sentence imposed within the statutory guidelines will not be disturbed on appeal if it is within the trial court's discretion and not a result of partiality, prejudice, oppression, or corrupt motive. [Citation omitted.] When a reviewing court determines that no reasonable person would agree with the trial court's decision, then an abuse of discretion will be found. [Citation omitted.]" *State v. McCloud*, 257 Kan. 1, 9, 891 P.2d 324, *cert. denied* 516 U.S. 837 (1995).

Behrendt fails to cite to any case to support his argument that the trial court abused its discretion in ordering him to serve 45 days in jail as a condition of probation. Behrendt merely cites to the general rule, involving conditions of probation, contained in *State v. Lumley*, 267 Kan. 4, 977 P.2d 914 (1999). *Lumley* states:

"A condition of probation will not be held invalid unless it (1) has no reasonable relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." 267 Kan. at 14.

Here, Behrendt pled no contest to felony theft. The jail term that the trial court imposed on Behrendt is expressly permitted by K.S.A. 21-4610(c)(14), authorizing the court to impose up to 60 days of jail time as a condition of probation. Behrendt bears the burden of showing that the trial court abused its discretion. See *State v. Vanderveen*, 259 Kan. 836, 843, 915 P.2d 57 (1996).

Behrendt's appellate brief, however, contains a weak inference that the trial court's imposition of his jail sentence was a result of partiality, prejudice, oppression, or corrupt motive. Behrendt's appellate brief notes that the trial court was personally familiar with the owners of the business and was personally familiar with the business' operations. Behrendt argues, "[i]t appears the lower court considered his personal knowledge of the victim and their business in deciding the jail sentence of 45 days."

But Behrendt does not argue that the trial court's jail sentence condition was a result of partiality, prejudice, oppression, or corrupt motive. See *McCloud*, 257 Kan. at 9. Indeed, Behrendt's brief

fails to cite to *McCloud* or to any other caselaw containing this requirement. In fact, Behrendt fails to raise any claim in his brief that the trial court's jail sentence condition was a result of partiality, prejudice, oppression, or corrupt motive. An issue not briefed is deemed abandoned. *State v. McCaslin*, 291 Kan. 697, 734, 245 P.3d 1030 (2011).

Even if Behrendt had briefed this argument, his argument would still fail. "Comments by the sentencing judge which are based entirely on evidence presented to the court in its judicial capacity do not necessarily prove that the sentence imposed was improper or reflect partiality, prejudice or corrupt motive by the judge." *McCloud*, 257 Kan. at 7.

At sentencing, the trial judge commented that his best friend used to own City Beverage. The trial judge also stated that he was familiar with City Beverage's business practices in response to defense counsel's argument that Behrendt would lose his job if he was sentenced to jail time. The trial judge's comments read as follows:

"Well, you know, when he was working for these people they throw those kegs down around there all day long. I know about that business, and I know what it entails and how much work goes into it, and you've got their trust involved. And, and that thing started out with Norman Leeway and Joe Mamari and that business has been here ever since. A good business in town."

The trial court's comments concerning its knowledge of City Beverage's business practices do not indicate that it imposed Behrendt's jail sentence condition because of partiality, prejudice, oppression, or corrupt motive. It would be a logical non sequitur to conclude that because the trial court knew City Beverage's former owners and knew details about how City Beverage operated that therefore the trial court's decision was based on partiality, prejudice, oppression, or a corrupt motive. Because Behrendt has failed to show that the trial court's actions were partial, prejudicial, oppressive, or corrupt, his argument is fatally flawed.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.

* * *

HILL, J.: I must respectfully dissent on one point. I would hold that the trial court did not abuse its discretion when it considered the opportunity costs as a factor to be included in any restitution order. I refer to the losses a retail merchant sustains when deprived by a thief of the opportunity to sell that merchant's goods at retail.

The calculation of such amounts is straightforward. For example, if a merchant, such as the victim here, was selling beer and a thief stole 100 cases of beer, the thief took not only the beer but also deprived the merchant of ever selling those 100 cases. Whatever the profit was that could have been obtained from their sale is obliterated by the thief. While it is true the 100 cases can be re-placed—usually at wholesale prices—the ability to sell those first 100 cases is now gone. Under such circumstances, a retail merchant suffers a loss that is greater than the replacement costs.

The majority relies upon *State v. Hall*, 45 Kan. App. 2d 290, 247 P.3d 1050 (2011) aff'd 297 Kan. 709, 304 P.3d 677 (2013), as per-suasive authority for holding the trial court here abused its discre-tion by setting a restitution figure that included lost profits. I be-lieve *Hall* is not persuasive. The *Hall* panel relied upon *Illinois Cent. R. Co. v. Crail*, 281 U.S. 57, 50 S. Ct. 180, 74 L. Ed. 699 (1930), a 1930 United States Supreme Court case that dealt with a shipment of coal that was 2 or 3 tons short of what the railroad ordered. The railroad would add the coal to its stockpile and either use it (steam locomotives used coal) or sell it. Those facts are sim-ilar to the facts in *Hall* where veterinarian supplies stored for use at the veterinary clinic or for sale over the counter were stolen. But those facts are not similar to the facts here where the merchant buys beer at one price and sells it to its customers at a different price.

The *Hall* panel decided the clinic would receive a windfall if it received profits as well as the replacement of its stolen supplies as restitution. The *Hall* panel thus limits the thief's responsibility for restitution to wholesale costs. Such a view is too restrictive, for it ignores other costs that a retail merchant has when maintaining stock in a warehouse. Those costs include labor, electricity, taxes,

and all the other costs associated with maintaining a warehouse. None of those expenses are included in the replacement cost of the beer, yet they are losses sustained by the merchant when the merchant is denied the opportunity to sell its wares on the retail market.

The more modern view takes into account lost profits as part of a fair restitution order. This is reflected by appellate court holdings in Florida, Idaho, and Georgia in which the courts directed that the retail value should be assigned to retail goods when determining restitution. See *J.C. v. State*, 3 So. 3d 346 (Fla. Dist. App. 2008); *Garrett v. State*, 175 Ga. App. 400, 333 S.E.2d 432 (1985); *State v. Smith*, 144 Idaho 687, 169 P.3d 275 (2007).

When analyzing this issue of determining restitution, the 10th Circuit Court of Appeals, in a case cited by the majority, said it best: "Thus where the victim is a retail merchant, the market value is the retail sales price [citation omitted], and where the victim is a wholesale merchant, the market value is the wholesale price." *U.S. v. Cummings*, 798 F.2d 413, 416 (10th Cir. 1986).

K.S.A. 21-4610(d)(1) clearly allows our trial courts to order restitution "to the aggrieved party for the damage or loss caused by the defendant's crime . . . ." I would not limit a trial court's discretion as the *Hall* panel did and as the majority does here.

In this case, City Beverage will never again be able to sell the stolen beer to its customers because Behrendt deprived them of that opportunity. I would hold the trial court did not abuse its discretion when it ordered restitution.