(294 P.3d 353)

No. 107,186

STATE OF KANSAS, *Appellee*, v. KATHERINE DAVIS, *Appellant*.

Opinion filed February 8, 2013.

*Shawn E. Minihan*, of Kansas Appellate Defender Office, for appellant.

*Megan Massey*, assistant county attorney, *John P. Wheeler, Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., LEBEN and ARNOLD-BURGER, JJ.

LEBEN, J.: Katherine Davis stole goods from JC Penney, a retail merchant, and the district court ordered that she pay restitution to the merchant equal to the retail sales price of the items. Davis contends that the court should have awarded restitution only for the amount the merchant paid to buy the goods from its supplier.

But no evidence was presented in this case outlining any value other than the retail price of the goods, and no evidence showed that the recovery of that amount by the retailer would be inappropriate. Kansas statutes and caselaw emphasize that the district court has substantial discretion in determining the amount of restitution, and choosing the retail value of goods stolen from a retail merchant as the value for restitution in these circumstances is within the district court's discretion. We therefore affirm its judgment.

## STATUTORY FRAMEWORK

Two similar statutes provide the district court its authority to order a convicted criminal defendant to pay restitution. We cite here to the statutes that were in effect when Davis was sentenced,

K.S.A. 2010 Supp. 21-4603d and K.S.A. 21-4610, but the same provisions have found their way into statutes enacted as part of a general recodification of the Kansas criminal laws. See K.S.A. 2011 Supp. 21-6604(b)(1) and K.S.A. 2011 Supp. 21-6607(c)(2).

K.S.A. 2010 Supp. 21-4603d gives the district court general sentencing authority, and this statute provides that along with any other sentence that may be entered, "the court shall order the defendant to pay restitution." K.S.A. 2010 Supp. 21-4603d(b)(1). As to amount, the statute provides that the restitution "shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable."

K.S.A. 21-4610 gives the district court authority to order restitution as part of a probation order. It provides that "the court shall order" that the defendant "[m]ake reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime." K.S.A. 21-4610(d)(1). As to amount, this statute provides that restitution be "in an amount and manner determined by the court." K.S.A. 21-4610(d)(1). Once again, restitution must be ordered "unless the court finds compelling circumstances which would render a plan of restitution unworkable." K.S.A. 21-4610(d)(1).

Here, as would often be the case, the district court made its restitution order both as part of its sentence and as a condition of the defendant's probation. Nothing in the text of either of these statutes indicates that any different rules were intended to apply to the determination of restitution amounts in these two related situations (*i.e.*, the sentence itself and the conditions of probation). Statutes on the same subject are considered *"in pari materia"* (in the same matter) and are to be interpreted to achieve consistent results whenever possible. *In re Marriage of Takusagawa*, 38 Kan. App. 2d 401, 411, 166 P.3d 440 (2007). We would expect, then, to be able to use the statutory text from either statute to guide us in concluding whether the district court has correctly determined the amount of restitution to be paid, which is the only disputed issue in our case.

## Existing Caselaw Interpreting These Statutes

We can draw additional guidance in interpreting and applying these statutes from Kansas Supreme Court decisions on restitution ordered under the present statutory framework. Five cases provide substantial guidance: *State v. Dexter*, 276 Kan. 909, 80 P.3d 1125 (2003); *State v. Hunziker*, 274 Kan. 655, 56 P.3d 202 (2002); *State v. Applegate*, 266 Kan. 1072, 976 P.2d 936 (1999); *State v. Allen*, 260 Kan. 107, 917 P.2d 848 (1996); and *State v. Beechum*, 251 Kan. 194, 833 P.2d 988 (1992).

From these cases, we know that the starting point is generally the fair-market value of the stolen goods. See *Hunziker*, 274 Kan. at 664. But restitution can go beyond merely awarding the value of damaged or stolen property. *Allen*, 260 Kan. at 115. In *Hunziker*, for example, the court approved the award of an amount reimbursing a backhoe owner for work lost while the damaged backhoe wasn't available for use. 274 Kan. at 664. In *Beechum*, the court approved the award of airfare for the murder victim's 12-year-old son to travel from Kansas to New York to live with his father, along with the father's lost wages for spending the day traveling on airplanes accompanying his son after the mother was murdered. 251 Kan. at 202-03.

Although restitution may go beyond property loss so as to include other losses, as *Hunziker* and *Beechum* illustrate, restitution should be provided only up to the amount of the victim's loss, however characterized. See *Hunziker*, 274 Kan. at 663-64. The court provided two examples of costs not subject to restitution in *Hunziker*. There, the court overturned an award of the cost of touch-up paint for the backhoe when the full fair-market value of the backhoe had already been awarded in restitution, and the court overturned reimbursement of the amount the victim paid an attorney to provide advice and prepare exhibits regarding the victim's losses. 274 Kan. at 664, 667-68; see *Beechum*, 251 Kan. at 203 (noting that "[n]ot all tangential costs incurred as a result of a crime should be subject to restitution"). As to the attorney fees, the court noted that there had been no need in *Hunziker* "to trace embezzled funds, recreate destroyed data, or recover stolen property."

274 Kan. at 667-68. So the fees did not count toward the victim's loss and could not be included in the restitution amount.

The court has given us guidance regarding comparisons between determining a restitution amount and determining damages for other purposes:

- First, we can draw only limited guidance from the legal rules generally applied in determining damages. In *Hunziker*, the court advised that " 'the rigidness and proof of value' " for damages in a civil-damages suit " 'does not apply in a criminal case.' " Rather, what's required for restitution in a criminal case is that " 'the court's determination . . . must be based on reliable evidence which yields a defensible restitution figure.' " 274 Kan. at 660 (quoting *State v. Casto*, 22 Kan. App. 2d 152, 153-54, 912 P.2d 772 [1996]).

- Second, "[t]he amount of restitution can be greater than the damages used to classify the crime." *Allen*, 260 Kan. at 116. Thus, for example, there may be cases in which damages are calculated conservatively when determining whether the crime is a felony but for which a greater amount could be awarded in restitution.

- Third, although there are similar federal statutes regarding restitution in criminal cases, our Supreme Court has found them of limited usefulness since the federal statutes are much more detailed on this topic than are our Kansas statutes. *Hunziker*, 274 Kan. at 665-66; *Applegate*, 266 Kan. at 1077-78.

The final point of significance is that the district court exercises its discretion in determining the amount of restitution. *Dexter*, 276 Kan. at 912. There are legal limits, of course, as *Hunziker* demonstrates. But we are not applying rules as rigid as applied in determining civil damages. *Hunziker*, 274 Kan. at 660.

The extent of a trial court's discretion was demonstrated in *Applegate*. There, two people were killed and another injured in an auto accident in which the defendant was driving drunk and recklessly. Before the district court set the restitution amount, the heirs and the injured party settled all claims with the defendant's auto insurance company for $100,000. Our Supreme Court held that

the existence of a civil settlement didn't preclude a further restitution award in the criminal case, but it concluded that the district judge did not abuse his discretion in finding that the civil settlement "satisfied the statutory requirement for restitution in the criminal proceeding." 266 Kan. at 1079-80.

We will draw on these previous decisions, as well as the statutes, to determine whether the district court erred in its restitution order.

## How the District Court Exercised Its Discretion

With this legal background in mind, let's turn next to how the district court exercised its discretion in this case. In doing so, we first will summarize the evidence and arguments presented to the district court. Then we'll consider its ruling.

The State presented the testimony of the JC Penney store manager, Sarah Louise Guinn. She said that the retail value of the items Davis stole was $1,168 and that the items weren't in condition to be sold when they were recovered from Davis. Guinn testified a stolen suitcase had dirt and stains on it and that the clothing had a smoke smell; Davis was a smoker.

Under questioning by Davis' attorney, Guinn conceded that $1,168 represented a retail price, not the cost of the goods to JC Penney. But no evidence was presented of any other specific value for the merchandise. Davis also testified at the restitution hearing, but her testimony mostly dealt with the condition of the items when they were recovered, not their retail value or the price JC Penney had paid to purchase the goods.

Based on this evidence, the State argued for restitution of $1,168. Davis' attorney argued that JC Penney should only receive the cost of the goods, not the retail price. Davis' attorney also noted Davis' testimony that the suitcase hadn't been damaged, that the smoke smell could have come from other JC Penney employees, and that some items hadn't been fully described.

The district judge noted that it was "stuck with whatever information . . . is presented by the parties," and that the retail value was "the only figure I've got." The court said that it "normally" wouldn't award an amount that would include a profit for the re-

tailer, but that since it had only the $1,168 figure, it would enter a restitution order in that amount.

## Standard of Review on Appeal

We begin our review of the district court's decision by considering the standards that must guide us, generally known as the standards of review. The Kansas Supreme Court advised in *Dexter* that three different standards of review can apply to a district court's determination of restitution. 276 Kan. at 912-13.

The first is the abuse-of-discretion standard, which generally applies to the determination of the amount of restitution. 276 Kan. at 912. Under the most common application of that standard, a district court abuses its discretion only when no reasonable person would have taken the view adopted by the court. But it's also an abuse of discretion if the district court's decision is based on a factual or legal error. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

The second *Dexter* standard tests the finding of causation—a finding that the crime actually caused the victim's loss. There must be substantial evidence to support that causal link. 276 Kan. at 913.

The third *Dexter* standard is that we have unlimited review over any statutory interpretation that affects the restitution determination. 276 Kan. at 913.

On appeal, Davis primarily argues that awarding anything more than the cost paid by JC Penney for these goods gives the merchant a windfall. Davis also argues that some deduction should have been made to recognize that the recovered items still had some value. Arguably, all three *Dexter* standards may be worth considering in examining these arguments on appeal.

## Analysis

*Review for Abuse of Discretion or Statutory-Interpretation Errors*

We'll consider the first (abuse of discretion) and third (statutory interpretation) *Dexter* factors together. After all, one way a judge can abuse his or her discretion is by making a legal error, and misinterpreting the restitution statutes would qualify. So we consider together whether the judge here abused his discretion in the

traditional manner, *i.e.*, by making a decision no reasonable person would have made, or by making a legal error, *i.e.*, misinterpreting the statute.

We find nothing unreasonable about adopting the retail value of the stolen merchandise for restitution purposes in this case when that was the only value presented in evidence. If the district court has some discretion in determining the amount of restitution—and we know it does—then choosing the retail value is within that discretion when (a) that is the only value in evidence and (b) no other evidence convincingly shows that an award of the retail value would be inappropriate. Those conditions are met here.

We add the second condition—that no other evidence convincingly shows that an award of the retail value would be inappropriate—because we can imagine such a case. For example, let's assume that one company, Company A, sells a single product to Company B. Company A buys the product at wholesale from a supplier and sells it at retail to Company B. Let's also assume that Company A has a contract with Company B to sell a fixed quantity of the product each year. If a thief steals some of the product from Company A, and if Company A can simply replace that amount at its normal wholesale cost, then Company A's loss is only the wholesale price, not the retail one—it hasn't lost any sales to Company B.

But our case has no such evidence. In its absence, the district court has sufficient discretion to award the retail price if supported by the evidence that has been presented.

Still, even with no abuse of discretion on the traditional test (whether a reasonable person could agree with the district court), we must also examine the statutory language: Does the statute somehow prevent an award of the retail value of goods stolen from a retail seller? We find that the answer is no.

In fact, the statutory language emphasizes the district court's discretion. K.S.A. 21-4610, the statute providing for restitution as a condition of probation, notes that restitution shall be "in an amount and manner determined by the court." Neither K.S.A. 21-4610 nor K.S.A. 2010 Supp. 21-4603d, the sentencing statute, references specific methods of determining value. K.S.A. 21-4610

does limit restitution to "the damage or loss caused by the defendant's crime," though K.S.A. 2010 Supp. 21-4603d provides broad authority for restitution "not . . . limited to[] damage or loss caused by the defendant's crime."

By noting that language, we do not suggest that there need be no causal connection between the restitution amount and the crime. After all, these statutes should be read together, and our Supreme Court has held that only losses caused by the crime may be compensated through restitution and that some losses are too tangential to be assessed. *State v. Sammons*, 276 Kan. 574, Syl., 78 P.3d 470 (2003); *Hunziker*, 274 Kan. at 664, 667-68; *Beechum*, 251 Kan. at 202-03. Even so, the statutory language suggests broad authority for the district court in picking the appropriate value for a given case.

*Review for Substantial Evidence*

We turn then to the final *Dexter* standard for our appellate review—whether substantial evidence supports the finding of causation between the crime and the victim's loss. The evidence is pretty straightforward in demonstrating causation. The store manager, Ms. Guinn, testified that each of the items Davis stole from the store was damaged, soiled, previously worn, or smelled like smoke, which made it impossible to return the items to store shelves for sale. She also testified that the retail value of the items was $1,168.

It's true that the prosecutor could have presented even more evidence to support causation, especially in establishing the retail value as the proper one for restitution. No evidence was presented to demonstrate that these items were likely to have been sold or what might have been done with them if they weren't sold within a reasonable time frame. But surely a prosecutor is not required to eliminate every possibility that another value might be more appropriate.

Even in a civil trial for damages, the plaintiff need only show "a reasonable basis for computation" of the damages so that the factfinder can "arrive at an approximate estimate" of them. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, Syl. ¶ 7, 266 P.3d 516

(2011). But restitution hearings are not civil-damages trials; they are add-on evidentiary hearings at the end of a criminal proceeding that has focused mainly on the question of guilt or innocence. Accordingly, our Supreme Court has said that the rules for proving damages in a restitution hearing are not as strict, and the district court's value determination ultimately must be based on reliable evidence that leads to a defensible figure. *Hunziker*, 274 Kan. at 660. That standard was met in Davis' case.

Davis also argued on appeal that some deduction should have been made to the restitution amount to recognize that the recovered items still had some value. We need to evaluate this argument only to determine whether substantial evidence supports the district court's ruling. By awarding the full retail value with no deductions, the district court impliedly found that the recovered goods had no value—and that's supported by the store manager's testimony. She testified that all of the items were "unsellable" and that the loss was $1,168. Since we do not reweigh the evidence on appeal, *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 954, 135 P.3d 1127 (2006), we have no authority to conclude that the recovered items had some specific value and to deduct that from the restitution amount.

## Two Recent Opinions from Our Court

Before we close this opinion, we should comment on two recent opinions of our court that might suggest a different result here: *State v. Behrendt*, 47 Kan. App. 2d 396, 274 P.3d 704 (2012), *petition for rev. filed* May 10, 2012; and *State v. Hall*, 45 Kan. App. 2d 290, 247 P.3d 1050 (2011), *rev. granted* September 23, 2011. Neither is officially precedential at this point because a petition for review by our Supreme Court was granted in one and a petition for review is pending in the other. See Supreme Court Rule 8.03(i) (2012 Kan. Ct. R. Annot. 72). But these are published opinions of our court, and Davis has cited to *Hall* in her appellate brief. Accordingly, we should explain why we have not found their reasoning decisive in Davis' case.

In *Hall*, the defendant had stolen veterinary services and products from her employer, a veterinary clinic. Our court said that

restitution normally should be set at fair-market value of the stolen items, 45 Kan. App. 2d at 301, but concluded that the wholesale cost of the items should have been used in this case. 45 Kan. App. 2d at 304. It may have been significant that Hall's employer "had a policy of providing discounted veterinary care and products for employees' pets." 45 Kan. App. 2d at 292. But to the extent that *Hall* stands for the broader proposition that a retail merchant can only recover its purchase price—not its retail selling price—for goods ·stolen from the merchant, see 45 Kan. App. 2d 290, Syl. ¶ 8, we find the primary authority relied upon in *Hall* unpersuasive when applied in the restitution context. That primary authority was a 1930 United States Supreme Court case dealing with the calculation of damages in a civil lawsuit, 45 Kan. App. 2d at 303 (citing *Illinois Cent. R. Co. v. Crail*, 281 U.S. 57, 50 S. Ct. 180, 74 L. Ed. 699 [1930]). But as we've previously noted, our Supreme Court has said that the rules applied in determining civil damages are of limited use in determining the rules to be applied in determining restitution amounts. *Hunziker*, 274 Kan. at 660.

The plaintiff in the *Illinois Central Railroad* case was a company that sold coal, and it bought coal regularly to have supplies on hand to sell. One shipment that it had paid for was short 5,500 pounds of coal, and the Court had to determine whether the proper damage figure was the cost the plaintiff had paid (the wholesale price) or the price it would have received in selling the coal (the retail price). Since the cost for the company to purchase coal hadn't increased after it received the short shipment, and it lost no sales before it received more shipments, the United States Supreme Court ruled that it could only recover the price it had paid, not what it might later have sold the coal for. *Illinois Cent. R. Co.*, 281 U.S. at 63-65. Although it arose in the context of a civil lawsuit, the *Illinois Central Railroad* case was much like the hypothetical situation we discussed earlier, in which the crime victim sells a fixed quantity of goods, replaces the stolen goods at cost, and loses no sales. In that context, awarding anything more than the merchant's cost to purchase the goods—the wholesale price—would be excessive. But there is no evidence in our case about whether JC Penney lost sales, and we see no reason to limit a retail seller's

restitution as a matter of law to the seller's initial cost in purchasing the items.

In *Behrendt*, the other recent opinion we'll consider, the defendant had stolen beer from a wholesale beer distributor. Our court concluded that restitution could be awarded only for the cost paid by the crime victim, not the price at which it had planned to sell the beer to a tavern or liquor store. 47 Kan. App. 2d at 403. The *Behrendt* court relied upon three precedents to support its ruling: *Hall, Illinois Central Railroad,* and *United States v. Cummings,* 798 F.2d 413 (10th Cir. 1986). We have already discussed *Hall* and *Illinois Central Railroad,* which we do not find persuasive. But the *Cummings* case, in our view, supports the decision we have made in Davis' case, not the result in *Behrendt*.

The *Cummings* court said that when merchandise is stolen from a merchant, "market value is the sales price the merchant would have obtained for the merchandise." 798 F.2d at 416. It concluded that where the crime victim is a retail merchant, the retail sales price is the market value, and where the crime victim is a wholesale merchant, the wholesale price is the market value. 798 F.2d at 416. In each case, the *Cummings* court adopted the price at which the crime victim/merchant was to have *sold* the stolen property to another. For example, a retail merchant buys goods at wholesale and sells them at retail; so the *Cummings* court said the retail value was the market value.

The *Behrendt* court seemed to apply *Cummings* by saying that the crime victim, a wholesale merchant, should receive restitution in the market value, which "would be its wholesale price." 47 Kan. App. 2d at 402. But the court then said that this would be "the amount it paid for its beer inventory, not the amount it would receive by selling that inventory." 47 Kan. App. 2d at 402-03. That would not be the result called for under *Cummings*. After all, a wholesale merchant buys goods at a price less than wholesale and sells them at the wholesale price; otherwise, there would be no profit. Had *Cummings* been applied in the *Behrendt* case, the crime victim there would have been able to receive restitution in an amount representing the price at which the merchant would have sold the beer at wholesale to retail taverns or liquor store, not

the price at which it purchased the goods from a manufacturer or other supplier.

*Cummings* is of limited help anyway, because it dealt with determining property value for the purpose of classifying a crime, not for restitution; our Supreme Court has said that the amount of restitution can be greater than the damages used to classify the crime. *Allen,* 260 Kan. at 116. But even in the context of classifying a crime, the *Cummings* court would generally value items at retail when stolen from a retail merchant and at wholesale when stolen from a wholesale merchant. In each case, the value chosen is the price at which the crime victim would have sold the goods.

## CONCLUSION

Katherine Davis stole goods from a retail merchant, and the district court awarded restitution in the amount of the retail sales price for those goods. Both caselaw and the Kansas restitution statutes emphasize that the district judge has substantial discretion in determining restitution amounts. In this case, the district court didn't abuse its discretion when it chose the retail sales price as the restitution amount.

The district court's judgment is affirmed.

\* \* \*

GREEN, J., concurring in part and dissenting in part: I concur fully in the holding of the majority that the amount of restitution to an aggrieved party for the damage or loss caused by a defendant's crime is to be determined by a trial judge exercising his or her judicial discretion. Nevertheless, I disagree with the majority's holding that the trial judge properly applied his discretion in determining restitution in this matter.

In ordering restitution in this case, the trial judge explained that although JC Penney's loss was less than the $1,168 it requested as restitution, he would order restitution in this amount because the parties had presented him with no other amount:

"In the Court's opinion the JC Penneys store is entitled . . . to recouping any actual loss they have suffered. I don't think today during the hearing I have heard what that loss is. They didn't lose $1,168. They lost their actual cost of that mer-

chandise. The fact that they didn't make a profit is really not normally an issue that the Court would award them in terms of restitution. But frankly, it's the only figure I've got. It's the only one that was presented by either side, and absent any other information, which is all past at this point, the Court will enter an order of restitution for the amount of $1,168 in favor of JC Penneys."

When the trial judge stated that he was left with only one choice, I believe this was an abuse of discretion.

An abuse of discretion occurs when a trial judge fails to appreciate the discretion he or she has. *State v. Horton*, 292 Kan. 437, 440, 254 P.3d 1264 (2011); see also *State v. Parker*, 48 Kan. App. 2d 68, 76, 282 P.3d 643 (2012) ("Discretion is granted to a trial judge so that decisions can be made based on appropriate consideration in a given case. And an abuse of discretion does occur if the judge refuses to exercise discretion or fails to appreciate the discretion he or she has."). Here, the trial judge was not required to adopt JC Penney's requested restitution amount of $1,168 because this was the only amount submitted for consideration. For example, the trial judge could have stated that JC Penney's evidence of the damage or loss caused by the defendant's crime was inadequate and required JC Penney to furnish additional information. The trial judge could have required JC Penney to provide the court with the actual cost of the merchandise.

Because the trial judge failed to appreciate the discretion he had, it is impossible to determine whether the abuse of discretion resulted in the prejudice of the defendant. See *Horton*, 292 Kan. at 440-41. Thus, I would remand this matter to the trial court for a new determination of the amount of restitution to be ordered.