NOT DESIGNATED FOR PUBLICATION

No. 122,366

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DOUGLAS MICHAEL HEIT,
*Appellant*.


MEMORANDUM OPINION

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed June 25, 2021. Affirmed in part, vacated in part, and remanded with directions.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., BUSER and CLINE, JJ.

PER CURIAM: Douglas Michael Heit appeals the Finney County District Court's imposition of concurrent life sentences for two convictions of aggravated indecent liberties with a child. Heit raises two issues. First, he contends the district court abused its discretion by denying his motions for a sentencing departure. Second, he claims the district court erred by failing to make adequate findings when ruling on his constitutional challenge to lifetime postrelease supervision in this case. Upon our review, we affirm the district court's sentences. But we remand the case with directions to issue a nunc pro tunc order to correct the sentencing journal entry because Heit is not subject to lifetime postrelease supervision.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Heit and his wife were interested in becoming foster parents. They contacted the Kansas Department for Children and Families (DCF) to begin the process of becoming foster parents. The Heits were approved, and L.M., an eight-year-old girl, was placed in their care.

Heit was employed as a Garden City police officer. He did not inform DCF that he suffered from posttraumatic stress disorder (PTSD) and alcoholism. His wife later claimed she did not understand the extent of Heit's psychological issues. Heit did not express concerns about having L.M. living in the home until shortly before the molestations occurred.

On several occasions in 2018, Heit took L.M. to a rural location and allowed her to drive an off-road sport utility vehicle. As she was driving, Heit placed his hand between her legs and rubbed the vaginal area inside her underwear.

The State charged Heit with six counts of aggravated indecent liberties with a child for his illicit touching of L.M. Prior to trial, Heit and the State entered into a plea agreement wherein Heit would plead no contest to two counts of aggravated indecent liberties with a child. In return, the State would dismiss the remaining counts. Under the agreement, at sentencing, the parties could argue for any sentence permitted under Kansas law. Heit entered no-contest pleas to two counts of aggravated indecent liberties with a child, the district court accepted the pleas, and Heit was found guilty.

Heit's counsel filed two sentencing departure motions. In the first motion, Heit sought a departure from the presumptive off-grid sentences of life imprisonment to sentences on the sentencing grid. In the second motion, he asked for a durational departure to half of the presumptive grid sentence. Heit's counsel also filed a lengthy

2

challenge to the constitutionality of lifetime postrelease supervision under K.S.A. 2018 Supp. 22-3717. The State filed responses opposing the motions.

At sentencing, it was determined that Heit had a criminal history score of I. The State recommended imposition of the presumptive off-grid sentences of life imprisonment with mandatory service of 25 years before parole eligibility. On the other hand, defense counsel argued for a substantial departure to reduce the number of years of incarceration.

In support of his departure motions, Heit's evidence showed that as a Garden City police officer in 2010 he was involved in a shooting. Arriving at the scene of a domestic disturbance, Heit shot but did not kill a man who was stabbing a woman. Consequently, Heit suffered from PTSD. Heit's condition worsened after the assailant's conviction was overturned on appeal and the man later entered a plea to a lesser offense. Heit obtained limited counseling for his condition, and he began to self-medicate by drinking alcohol. The combination of PTSD and alcohol use led to Heit reducing his workload with the police department, and he eventually retired.

Jerrod Steffan, a clinical psychologist who evaluated Heit, concluded that he did not have a sexually deviant interest in or preference for minors but that Heit's sexual assaults were the result of PTSD and alcohol abuse. Nevertheless, Steffan conceded that Heit's PTSD did not cause him to molest L.M.; the condition merely contributed to the circumstances leading to the sexual assaults. Steffan opined that Heit fell within a lower-than-average risk category for recidivism within the sex offender population. But Steffan acknowledged that Heit's risk of sexual recidivism would be influenced by his ability to avoid alcohol.

Heit also called former coworkers and his ex-wife to testify regarding changes that occurred to Heit's personality after the shooting. Heit's ex-wife and Heit testified

regarding his efforts to obtain help for PTSD and alcoholism. Heit testified that he did not believe he was a danger to society, but he acknowledged that he remained in jail because he was afraid that he would begin drinking again. Heit also admitted that he could be a danger to society when he was drinking alcohol.

The district court denied Heit's sentencing departure motions. In denying the departure motions, the district court did not specifically discuss the mitigating factors cited by Heit in the motions. Of note, Heit's counsel did not request that the court make additional findings or address the mitigating factors. The district court denied Heit's motion challenging the constitutionality of lifetime postrelease supervision. The court imposed concurrent off-grid life sentences without the possibility of parole for 25 years (hard 25) for each of Heit's convictions.

Heit appeals his sentences.

DENIAL OF MOTIONS FOR DURATIONAL DEPARTURE SENTENCES

Heit challenges the district court's denial of his durational departure motions. He presents two arguments. First, he contends the district court erred as a matter of law by failing to consider the mitigating factors presented by Heit in support of the departure motions. Second, alternatively, he asserts the district court abused its discretion in concluding that the mitigating factors presented by Heit did not constitute a basis for departure. We will consider these arguments individually.

An appellate court reviews a district court's sentencing departure determination for an abuse of discretion. An abuse of discretion occurs when the court bases its decision on an erroneous application of the law, when the court bases its decision on findings unsupported by substantial competent evidence in the record, or when the decision is otherwise arbitrary, fanciful, or unreasonable; in other words, no reasonable person in the

4

position of the district court would have adopted the same position. *State v. Powell*, 308 Kan. 895, 902-03, 425 P.3d 309 (2018).

K.S.A. 2020 Supp. 21-6627(a)(1) imposes a presumptive life sentence with no possibility of parole for 25 years upon a criminal defendant who is 18 years of age or older and has been convicted of one of the offenses listed in the statute. Aggravated indecent liberties with a child is one of the listed offenses. K.S.A. 2020 Supp. 21-6627(a)(1)(C). Nevertheless, a first-time offender may seek a departure to the sentencing grid. K.S.A. 2020 Supp. 21-6627(d)(1) provides:

> "(d)(1) On or after July 1, 2006, for a first time conviction of an offense listed in subsection (a)(1), the sentencing judge shall impose the mandatory minimum term of imprisonment provided by subsection (a), unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure. If the sentencing judge departs from such mandatory minimum term of imprisonment, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure. The departure sentence shall be the sentence pursuant to the revised Kansas sentencing guidelines act, article 68 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto, and, subject to the provisions of K.S.A. 2020 Supp. 21-6818, and amendments thereto, no sentence of a mandatory minimum term of imprisonment shall be imposed hereunder."

A plain reading of K.S.A. 2020 Supp. 21-6627(d) confirms that a district court is not required to articulate reasons for rejecting mitigating factors. Should there be any doubt, our Supreme Court has clarified that "[t]he statute does not require the sentencing judge to explain a decision denying departure." *Powell*, 308 Kan. 895, Syl. ¶ 6. K.S.A. 2020 Supp. 21-6627(d) requires the district court to make findings on the record only if it *departs* from the presumptive life sentence. 308 Kan. at 909 ("And while it is laudable for district courts to explain the reasons for their rulings, those explanations are voluntary.").

Heit argues that the district court's ruling constituted legal error because it failed to state that the district court considered his mitigating factors in denying the departure motions. But *Powell* imposes no such requirement on the district court. Because the district court is not obliged to articulate reasons for *denying* a departure, silence in the record regarding the district court's reasoning does not establish that the district court failed to consider Heit's mitigating factors. Moreover, as the party objecting to the district court's exercise of discretion, Heit bears the burden of affirmatively proving an abuse of that discretion. *Powell*, 308 Kan. at 911 ("Put simply, since reversal of a denial of a departure motion requires an abuse of discretion, and because the party alleging abuse of that discretion must demonstrate it, the only question on appeal is whether something in the record shows an abuse occurred.").

On this record, Heit has not shown that the district court—by failing to state that it considered the mitigating factors presented by Heit or by failing to articulate its reasons for denying the departure motions—committed any legal error.

Alternatively, Heit contends that if the district court considered the mitigating factors in support of his departure motions, the court abused its discretion by denying imposition of departure sentences because "no reasonable person would have denied Mr. Heit's request for departure."

In considering a departure to the sentencing guidelines in a so-called Jessica's Law case, the relevant inquiry is "whether the mitigating circumstances advanced both exist and supply a substantial and compelling reason to depart from the hard 25 life sentence." *Powell*, 308 Kan. at 915. According to K.S.A. 2020 Supp. 21-6627(a)(1) and (d)(1), the district court must impose a life sentence unless the court finds substantial and compelling reasons to depart. A departure finding, therefore, has two components:  the reasons must be *substantial* and *compelling*.

6

K.S.A. 2020 Supp. 21-6627(d)(2) provides a nonexclusive list of mitigating circumstances for a court's consideration:

> "(2) As used in this subsection, 'mitigating circumstances' shall include, but are not limited to, the following:
>
> (A) The defendant has no significant history of prior criminal activity;
>
> (B) the crime was committed while the defendant was under the influence of extreme mental or emotional disturbances;
>
> (C) the victim was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor;
>
> (D) the defendant acted under extreme distress or under the substantial domination of another person;
>
> (E) the capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired; and
>
> (F) the age of the defendant at the time of the crime."

In his motions for departure, Heit cited the lack of similar offenses in his criminal history, the lack of prior felony convictions, family support, remorse, and an employment record as mitigating factors. At sentencing, however, Heit's evidence primarily focused on his PTSD diagnosis and alcoholism as mitigation factors.

First, we consider whether the reasons proffered by Heit were substantial, meaning "'something that is real, not imagined; something with substance and not ephemeral.'" *State v. Jolly*, 301 Kan 313, 323, 342 P.3d 935 (2015) (quoting *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 [2001]).

Some of the mitigating factors were established in Heit's presentence investigation report, the accuracy of which the State did not challenge. Other factors were supported by evidence presented by Heit at the sentencing hearing. The State's evidence did not refute

the existence of Heit's PTSD diagnosis or alcoholism, and the district judge recognized Heit's assertion of mental health issues:

> "So to that end, the fact that you have gone through this kind of trauma in shooting somebody who, quite frankly, deserved to be shot, you saved their lives, and I think you should not show anything but pride in the fact that you did your job when you were asked to do it. And the—the bad guy was stopped based on your behavior."

In summary, the substantial nature of Heit's mitigating factors was not controverted. In particular, evidence showed that Heit suffered from PTSD and alcoholism and that these conditions may have contributed to his impaired judgment in the commission of the crimes.

But the existence of mitigating factors is not determinative in granting a departure sentence. The district court must also consider whether the mitigating factors are compelling. A departure reason is compelling if "'the court is forced, *by the facts of a case*, to leave the status quo or go beyond what is ordinary.'" *Jolly*, 301 Kan. at 323 (quoting *McKay*, 271 Kan. at 728). The district court's weighing of mitigating factors given the facts of the offenses constitutes a truly discretionary act.

> "While K.S.A. 21-4642(d) [now K.S.A. 2020 Supp. 22-6627(d)] does not allow a weighing of aggravating factors against mitigating factors, the facts of the case—including any egregious ones—are essential for a judge to consider in deciding if a departure is warranted based on substantial and compelling reasons. Simply stated, a judge does not sentence in a vacuum. The sentencing judge is to consider information that reasonably might bear on the proper sentence for a particular defendant, given the crime committed, including the manner or way in which an offender carried out the crime. This includes those 'circumstances inherent in the crime and the prescribed sentence.' See [*State v.*] *Florentin*, 297 Kan. [594], at 598, 303 P.3d 263 [(2013)]. Provided the sentence imposed is within the statutory limits, "'[i]t is the sentencing judge alone who determines the appropriate sentence to be imposed or other disposition of the

8

case by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, *the facts of the case*, and the public safety.'" *State v. Frecks*, 294 Kan. 738, 742, 280 P.3d 217 (2012) (quoting *State v. Vanderveen*, 259 Kan. 836, 842, 915 P.2d 57 [1996])." *Jolly*, 301 Kan. at 323-24.

Heit argues that no reasonable person would fail to conclude that his PTSD and alcoholism, along with his community service and lack of prior criminal history, are substantial and compelling reasons to depart from the presumptive life sentences. But the facts of the case and the evidence produced at the sentencing hearing undermine his argument.

The facts and circumstances surrounding the sexual assaults of L.M. are especially troubling. At the time of the sexual assaults, L.M. was only eight years old. As a child entering foster care, L.M. was already a traumatized and vulnerable child. L.M.'s mother essentially abandoned her, which resulted in L.M. initially living with her paternal grandmother. Upon the grandmother's death, L.M. went to live with her father, who did not provide adequate care. In short, L.M.'s first eight years of life were difficult and chaotic.

It is in the context of L.M.'s troubling domestic situation that Heit and his wife sought out foster children to live in their home. Notably, when DCF conducted a home study for placement of L.M. with Heit, he did not disclose to the agency his long and difficult history of PTSD or alcoholism. L.M. came to live with her new family, only to be victimized by Heit's sexual assaults. The adverse impact of this criminal conduct upon L.M. is clear given that, after the sexual assaults, she has exhibited behavioral issues which require therapy.

Testimony during the hearing regarding Heit's PTSD and alcoholism also raised public safety concerns. Steffan, a clinical psychologist, indicated that Heit did not have a

9

sexually deviant interest or preference for minors. He acknowledged, however, that he drew his conclusions from Heit's self-reporting about his sexual attitudes and behaviors. Steffan agreed that Heit's PTSD did not cause Heit to molest L.M., but it contributed to "issues that played a role in what happened." Steffan also admitted that people who commit crimes often have multiple issues affecting their behavior. Although Steffan opined that Heit was a lower-than-average risk for recidivism within the sex offender population, he conceded that Heit's risk of sexual recidivism would be influenced by his ability to avoid alcohol upon release from prison.

Evidence presented at sentencing showed that alcoholism played a role in Heit's exercise of poor judgment in sexually assaulting L.M. Heit's alcoholism was the consequence of self-medicating to alleviate his PTSD. But his alcoholism was a constant problem that was resistant to change for many years. Notably, Heit was unwilling to admit to a problem with alcohol abuse until the charges in this case. After he was hospitalized for a condition related to his alcohol consumption, he stopped drinking for about a month. After a month, he returned to drinking heavily. Heit similarly returned to drinking a month and a half after ending his PTSD treatment program early because Garden City would not continue to pay for the treatment. Heit admitted that he did not attempt to bond out of jail because he feared he would begin drinking again. Significantly, he candidly conceded that he is a danger to society when he is drinking. Heit presented no evidence that he could stop using alcohol. Indeed, prior cessation of alcohol use by Heit was always temporary.

We conclude the district court did not abuse its discretion in this case because Heit's mitigating factors were not substantial *and* compelling such that the district court was forced by the facts of the case to abandon the status quo and venture beyond the sentences that it would ordinarily impose. Accordingly, we hold that Heit's mitigating factors, taken together, did not reasonably constitute a substantial and compelling reason

to depart in this case from the presumptive off-grid sentences of life imprisonment with no possibility of parole for 25 years.

CONSTITUTIONALITY OF LIFETIME POSTRELEASE SUPERVISION

Heit next challenges the district court's imposition of lifetime postrelease supervision as part of his sentences. Heit seeks a remand because he contends the district court failed to make adequate findings of fact and conclusions of law when denying his constitutional challenge to the length of the postrelease supervision period as it applied to his sentences. The State responds, "as the district court pointed out, that issue is moot because he received a life sentence. . . . Stated another way, no remand is necessary to issue an advisory opinion on whether lifetime postrelease is appropriate, as that is not a part of Heit's sentence."

At sentencing the district judge stated, "I think probably the postrelease issues are moot. [Heit] will have an opportunity to serve out the sentence and at least look towards the possibility of a parole somewhere down the line." The district court rejected Heit's claim that lifetime postrelease supervision constituted cruel and unusual punishment. In rejecting Heit's argument, however, the district court did not order that Heit would be subject to lifetime postrelease supervision. Instead, the district court correctly noted that Heit had the possibility of parole after serving 25 years of his life sentence.

Postrelease supervision and parole are distinct legal concepts in Kansas law. If a criminal defendant is sentenced to an off-grid life sentence, his ability to leave prison on parole is governed by a decision of the Kansas Prisoner Review Board, not by exhaustion of a term of imprisonment imposed by the district court. A district court, therefore, may not impose a period of postrelease supervision in conjunction with a life sentence. See *State v. Harsh*, 293 Kan. 585, 589-90, 265 P.3d 1161 (2011); *Williams v. State*, 58 Kan. App. 2d 947, 983, 476 P.3d 805 (2020), *rev. granted* 312 Kan. 902 (2021).

11

In this case, however, we note that the journal entry of sentencing erroneously stated that the district court had, in fact, imposed lifetime postrelease supervision. Thus, Heit is confronted with the district court's oral sentence—which did not include imposition of lifetime postrelease supervision—and the journal entry which said that lifetime postrelease supervision was imposed at sentencing.

Under these circumstances, the sentence imposed in open court at the sentencing hearing controls over the sentence memorialized in the journal entry. *Abasolo v. State*, 284 Kan. 299, Syl. ¶ 3, 160 P.3d 471 (2007) ("A criminal sentence is effective upon pronouncement from the bench; it does not derive its effectiveness from the journal entry. A journal entry that imposes a sentence at variance with that pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed."). Since the journal entry in this case mistakenly states that the district court imposed lifetime postrelease supervision, the only error is in the journal entry reference. But this mistake does not require resentencing. We vacate the reference to lifetime postrelease supervision as stated in the journal entry and remand the case to the district court with directions to enter a nunc pro tunc order to correct the erroneous journal entry. See *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012).

We hold that Heit's request for a remand for additional findings of fact and conclusions of law regarding the constitutionality of lifetime postrelease supervision in this case is moot because the district court did not sentence him to lifetime postrelease supervision. Moreover, the journal entry's erroneous reference to lifetime postrelease supervision is vacated.

We affirm Heit's two concurrent hard 25 life sentences. The sentencing journal entry's reference to lifetime postrelease supervision is vacated, and the case is remanded with directions to the district court to enter a nunc pro tunc order correcting the journal entry of sentencing.

Affirmed in part, vacated in part, and remanded with directions.